Logan T. Johnston, # 009484
**JOHNSTON LAW OFFICES, P.L.C.**
1402 E. Mescal Street
Phoenix, AZ 85020
Telephone: (602) 452-0615
Email: ltjohnston@live.com
*Attorneys for Defendant Thomas Betlach*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| AITA DARJEE on her own behalf and on behalf of her minor child N. D.; and ALMA SANCHEZ HARO on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS BETLACH, Director of the Arizona Health Care Cost Containment System, in his official capacity,<br><br>Defendant. | CV-16-00489-TUC-RM (DTF)<br><br>**MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

The Plaintiffs contend that Defendant Thomas Betlach, Director of the Arizona Health Care Cost Containment System ("AHCCCS"), has violated two Medicaid statutes and the due process clause of the Fourteenth Amendment to the Constitution. They ask the Court to enjoin the Director "from violating" these laws and to require him to restore benefits to persons whose AHCCCS eligibility they allege has been incorrectly reduced.

Pursuant to Federal Rules of Civil Procedure 12(B)(1) and (6), the Director moves to dismiss the Complaint herein on two separate grounds. First, the Complaint fails to state a claim upon which relief may be granted. As discussed below, the Complaint fails to allege violations of either of the Medicaid statutes or due process.

Second, even if the Complaint stated a claim, the Court lacks jurisdiction because the Plaintiffs lack standing and their claims are moot. They are neither suffering any present harm nor are they likely to suffer any harm in the future.

## I. BACKGROUND

AHCCCS has over 1,800,000 recipients. Each year, as required by law, the agency must determine whether to renew the eligibility of each recipient. For immigrants, this process involves the interface between Medicaid, a "complex and highly technical regulatory program," *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2387, 129 L. Ed. 2d 405 (1994), and "our Byzantine immigration laws and administrative regulations [,which] are second or third in complexity to the Internal Revenue Code." *Martinez v. Holder*, 2009 WL 413078, at *1 (9th Cir. 2009). There is obvious potential for error, both by computers and humans in the application of these requirements. As Plaintiffs acknowledge at ¶¶ 48-50 of their Complaint, errors may be made not only by the government but also by AHCCCS recipients who provide incomplete or inaccurate information.

The Complaint alleges "computer systems and worker errors" were discovered in October 2015 that had caused AHCCCS to incorrectly reduce some immigrants from eligibility for full benefits to eligibility for emergency services only. AHCCCS readily admitted and fixed the computer programming error the Plaintiffs allege at ¶ 45 of the Complaint, and in the next few months agency personnel reexamined the cases of thousands of immigrants whose eligibility had been reduced from full to emergency benefits. Thousands of these reductions were found to be correct, but approximately

3,500 were found to be incorrect. These individuals were reinstated retroactively to full benefits. *Id.*, ¶ 40.

Some errors have occurred since that time. The Plaintiffs attribute the subsequent errors to "policies and practices" which they contend should be enjoined. In addition, they now allege that the notices of reduced eligibility that AHCCCS sent to all these people violated due process and Medicaid laws. Neither is the case.

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

On a motion to dismiss for failure to state a claim, "Review is limited to the contents of the complaint." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* 506 U.S. 999 (1992).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). Mere conclusions couched as factual allegations are not sufficient to state a cause of action. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

Here, the Plaintiffs allege generalizations about the eligibility renewal process and then follow with conclusions rather than any facts that demonstrate how the practices they describe violate the law. In particular, the two Plaintiffs fail to identify any way that the Director violated the law in determining their eligibility.

3

**A. The Plaintiffs' First Cause of Action Fails to State a Claim for Violation of the Reasonable Promptness Statute, 42 U.S.C. § 1396a(a)(8).**

42 U.S.C. § 1396a(a)(8) requires a Medicaid state plan to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." On its face, this statute applies to initial applications, not renewals. It was intended, as its plain language states, to require timeliness. *See Sobky v. Smoley*, 855 F. Supp. 1123, 1148 (E.D. Cal. 1994).

The Director complies with this statute. AHCCCS provides an opportunity to apply for medical assistance, and it furnishes assistance (whether defined in terms of eligibility determinations or actual services) with reasonable promptness. The Complaint does not allege to the contrary; it alleges a failure to make determinations *correctly*, rather than a failure to complete them *promptly*.

After describing last fall's computer problem, the Plaintiffs allege simply that "improper reductions" continue. *Id*., 41. The Plaintiffs do not allege the computer problem is still at issue; they attribute the reductions to AHCCCS "policy and practices" that "allow" erroneous determinations. The Complaint's conclusory allegations fail on two levels. First, they fail to identify how these supposed policies and practices violate the reasonable promptness statute. Second, the Complaint fails to allege that any of the faults it alleges caused the Plaintiffs' eligibility to be reduced.

At ¶ 47, the Plaintiffs cite AHCCCS rule A.A.C. R9-22-306(c), which requires AHCCCS to use information it deems "reliable" and, if necessary, a pre-populated

4

form that is sent to recipients for additional information. The Complaint alleges ambiguously that, "This rule is not as comprehensive as the federal regulation *or* is not implemented consistent with the federal requirements." (Emphasis added.) This vague allegation is a mere conclusion that cites no facts to support either of its disjunctive possibilities. In fact, a comparison of the language of the AHCCCS rule with the federal rules at 42 C.F.R. § 435.916(a)(2) and (3) shows they are substantially identical. The Complaint's allegation that the AHCCCS rule is less "comprehensive" than the federal rules is demonstrably incorrect. Similarly, the Complaint alleges no facts to show the AHCCCS rule is not implemented "consistent with" any federal requirement. In this regard, it should also be noted that 42 C.F.R. § 435.916(b) is permissive: where insufficient reliable information is available to renew eligibility, the state "*may*" adopt the procedures described at §435.916(a)(3)" regarding the use of pre-populated forms. Stated differently, the Complaint fails to allege anything the Director has done that violates the federal rules.

The other theory of the First Cause of Action is found at ¶¶ 47-50, where the Complaint alleges "AHCCCS policies and practices allow the agency to ask about such matters as the person's immigration status and alien number." The Plaintiffs allege there is no "need" for this information and contend these requests are "unnecessary" because the information could allegedly be found elsewhere. ¶ 50. They claim these unnecessary requests can elicit incorrect information from AHCCCS recipients. ¶¶ 48-50. Again, however, these are mere conclusions and do not allege why they would violate the law even if they were correct.

5

The Plaintiffs do not allege any facts that demonstrate alien identification numbers and information about immigration status are unnecessary, never needed, or, much less, improper for AHCCCS to request.[1]  To the contrary, there are any number of reasons why such information may be necessary.  Up to half of immigrants have changes during a year that may affect their eligibility. [2] The initial eligibility determination that is being renewed may have been incorrect. Grants of asylum may be terminated. 8 USC 1158(c)(2). Refugee status may be revoked. 8 USC 1157(c)(4). Lawful permanent residence may be rescinded. 8 USC 1256. Qualified aliens have various eligibility limitations they must meet. 8 USC 1612.

At ¶ 51, the Complaint summarizes the Plaintiffs' reasonable promptness theory: "AHCCCS policy and practices fail to process recertifications for immigrants pursuant to the [federal] *ex parte* process [42 C.F.R. § 435.916(a) and (b)]." Once again, this conclusory statement lacks any supporting factual allegation as to how federal law has been violated, either generally or as to the Plaintiffs.  Neither Plaintiff suggests she was required to provide an alien identification number or her immigration

---

[1]  In fact, state rules *require* immigrants to notify AHCCCS of any change in status. Federal rules *require* AHCCCS to facilitate recipients' ability to notify the agency of changes in status.  42 C.F.R. § 435.916 (c); 42 CFR 435.1200(f)(1)(ii)); A.A.C. R9-22-306.B(3)(c)(vi).

[2] "States are required to terminate eligibility in situations involving erroneous determinations of eligibility based on inaccurate information, as in cases involving fraud. . . . Research has indicated that 33-50 percent of people experience a change in circumstance that may impact their eligibility for coverage. . . . [These people] will need to provide additional information to the State so that their eligibility can be renewed." *Medicaid Program; Eligibility Changes Under the Affordable Care Act of 2010, 77 FR 17144-01.*

6

status.  Neither claims she was presented with a pre-populated form under the *ex parte* process.  There is simply no factual connection between the AHCCCS practices that the Plaintiffs assume exist and their cases.  Based on these allegations, it is equally plausible that AHCCCS and DES had information that was on its face reliable that showed the Plaintiffs' were not eligible for full benefits or that the "worker errors" the Plaintiffs allege are simply that: errors, not the result of any practice or policy, much less one that violates the law.

In addition, the theory that AHCCCS processes "allow" errors to occur fails to state any violation of law.  The Plaintiffs do not, and cannot, allege that this "allowing" of errors takes the form of having been unwilling to correct the computer problem or to restore full benefits to persons whose benefits had been incorrectly reduced. Instead, their allegation implicitly reduces to the theory that AHCCCS failed to prevent all errors, as if this were an unlawful "policy or practice."    Errors in this process are recognized to be inevitable. The Complaint acknowledges at ¶ 32 that the federal government designed its *ex parte* procedures to "cut down on errors that occur at recertification." The federal government proposes allowing states a 3% margin of error in eligibility determinations.  81 FR 40596-01, 2016 WL 3402966(F.R.) For decades, this number was 4 percent. *See* 45 FR 6326-01(1980). The Plaintiffs cite no authority for the proposition that any Medicaid program must or can be run without error.  "The law requires full compliance absent what is hoped will be minimum human error." *Robertson v. Jackson,* 766 F. Supp. 470, 476 (E.D.Va.1991), *aff'd,* 972 F.2d 529 (4th Cir.1992) (ordering timely food stamp determinations with 3% margin of error).

7

The plausibility standard set forth in *Ashcroft, supra*, "asks for more than a sheer possibility that a defendant has acted unlawfully." Here, the Plaintiffs have not alleged enough to allow the Court to draw a reasonable inference that AHCCCS did *anything* pursuant to an unlawful practice or policy. The Complaint does not allege more than the impermissible "sheer possibility" that reductions resulted from unlawful conduct, and even this possibility is not tied either to the "reasonable promptness" requirement or to the Plaintiffs' cases. The First Cause of Action fails to state a claim for relief.

### B. The Plaintiffs' Second Cause of Action Fails to State a Claim for Violation of Due Process or 42 U.S.C. § 1396a(a)(3).

Just as the Director complies with the reasonable promptness requirements, so he also provides due process and complies with 42 U.S.C. § 1396a(a)(3). The allegations as to Plaintiff Sanchez Haro implicitly demonstrate this.

The seminal due process decision regarding welfare benefits is *Goldberg v. Kelly,* in which the Supreme Court decided that a recipient must be permitted a pre-termination evidentiary hearing. 397 U.S. 254, 264 (1970). The Court stated that a recipient must "have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id*., at 267-68.

The Plaintiffs allege the Director has violated 42 U.S.C. § 1396a(a)(3), which requires state plans to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is

denied or is not acted upon with reasonable promptness." Medicaid regulations explicitly adopt the standards of *Goldberg v. Kelly* and create a series of rules at 42 C.F.R. § 431.200 et seq. to give specific content to the general principles enunciated by the Court. 42 C.F.R. § 431.205(d). The Medicaid rules prescribe when notice of an action affecting claims must be given (§§ 431.211-214), what information the notice must include (§ 431.210), when a hearing is required (§ 431.220), when services must be continued pending an appeal (§ 431.230), how a person may appeal (§§ 431.232-33), how hearings are to be conducted (§§ 431.240-43), how corrective, retroactive payments are to be made if the person prevails at the hearing (§ 431.246), and how the agency must inform recipients of the hearing process (§ 431.206).

AHCCCS has promulgated rules of its own that parallel the federal rules. *See* A.A.C. R9-34-101 et seq.  The Director complies with all these rules. The Complaint does not allege he has a policy and practice of violating either set of requirements.  It merely makes the conclusory allegation that "Defendant Betlach's written eligibility notice, as described herein, violates" due process and 42 U.S.C. § 1396a(a)(3)." Complaint, Second Claim for Relief, ¶ 5.  From what is alleged and "described herein," the Complaint fails to identify any aspect of either the federal or state requirements that the Director has violated.

Factually, since Ms. Darjee alleges she did not receive the notice that was sent to her, the Complaint's only allegation supporting the theory of the Second Cause of Action is the allegation that Ms. Sanchez Haro "did not understand the notice" she received and that her daughter "could not help her understand why she was not eligible

9

for full-scope AHCCCS benefits." *Id.*, ¶ 75.  Notably, the Complaint does not allege notice to Ms. Sanchez Haro was untimely or failed to contain the information required by 42 C.F.R. §431.210 or 42 C.F.R. §431.230 (regarding the right to continued services upon filing of an appeal). It does not allege she did not receive a notice written in Spanish, so language was presumably not an issue.  It does not allege she could not understand the notice's description of emergency-only services, her right to appeal, or her right to continued services if she did appeal.

For all the Complaint alleges, Plaintiff's inability to understand the notice simply means she believed she was entitled to full benefits and could not understand the notice because it was a mistake.  Her daughter had the same problem.  The Complaint makes not a single factual allegation that the notice was defective as a matter of due process, rather than as to the result it conveyed, and it fails to specify any rule - state or federal - that the Director violated.

The Plaintiffs do not, and cannot, allege that it is the practice or policy of AHCCCS not to send notices when benefits are reduced.  Ms. Sanchez Haro's example demonstrates that is not the case. The fact that the Darjees contend they did not get a notice adds nothing. [3]

---

[3] This Motion to Dismiss tests the sufficiency of the Complaint.  Thus Director Betlach does not seek to convert the motion to a summary judgment standard by asking the Court to consider additional documents he would otherwise provide if that standard applied. The Director would need discovery, pursuant to Rule 56(d), including the discovery he requested in his Motion for Extension of Time, before a summary judgment analysis would be appropriate.

The Complaint fails to state a claim that AHCCCS has done anything that violates either due process or 42 U.S.C. § 1396a(a)(3), Medicaid rules, or state rules.

### III.  MOTION TO DISMISS FOR LACK OF STANDING AND MOOTNESS.

Separate and apart from the Plaintiffs' failure to state a claim, the Court also lacks jurisdiction.  Plaintiffs must demonstrate standing for there to be federal jurisdiction to hear their case.  They have the burden to show the following:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (quotation marks and citations omitted).

In this case, restoration of the Darjees' benefits was "imminent if not complete" even before the Complaint was filed.  Complaint ¶ 59.  Ms. Darjee therefore had no standing when the Complaint was filed.

Neither did Ms. Sanchez Haro.  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" of the standing analysis." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (citation omitted). Ms. Sanchez Haro, however, does not trace her claimed injury to *any* unlawful policy or practice of the Director.  Moreover, even if she had been able to meet the second prong of standing, the reduction in her benefits

has been corrected. She has been retroactively restored to full benefits. [4] "[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1148 (2013) (citations omitted) (emphasis in original). Ms. Sanchez Haro cannot allege any certainly impending injury. Her injury has been redressed, and the declaratory and injunctive relief she seeks would not benefit her. Her claims for such relief are moot.

Her claims are not saved by the fact she seeks to represent a putative class. "A putative class acquires an independent legal status once it is certified under Rule 23," not before. *Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013). A limited exception to this rule exits where it is " 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." 133 S. Ct. at 1530–31 (quotation marks and citations omitted). An inherently transitory claim is one that "would evade review, either by its very nature or by virtue of the defendant's litigation strategy." *Slayman v. FedEx Ground Package Sys., Inc.,* 765 F.3d 1033, 1048 (9th Cir. 2014). If the "transitory nature of the conduct giving rise to the suit would effectively insulate defendants'

---

[4] For purposes of the jurisdictional motion, the Court may consider Plaintiff's acknowledgment (Dkt. 33) that she was restored to full AHCCCS benefits on or about August 22, 2016.

12

conduct from review," certification "potentially" relates back to the filing of the complaint. *Id.*

These are clearly not inherently transitory claims. Ms. Sanchez Haro's claim over her eligibility is *not* one that is insulated from review, either because of too little time for review before it becomes moot or for any other reason. She has the right under state and federal law to appeal changes in eligibility and to receive automatic continuation of full benefits pending the outcome of the appeal. 42 C.F.R. § 431.230. She can have the agency's decision reviewed in state courts. A.R.S. §12-901 et seq.

Ms. Sanchez Haro cannot create a "transitory" claim simply by choosing not to avail herself of the effective means of review she had the moment in April 2016 that she received notice of her changed benefits and questioned the change. She does not allege she did not understand the explanation of her right to appeal. It is a bootstrap argument to wait three months, file an action in federal court instead, obtain the very relief she could have received in state proceedings, and then complain that her federal case is "transitory" and not moot because she was fortunate enough to receive the relief she seeks before a class certification motion was heard. We do not argue there is no jurisdiction for failure to exhaust her administrative remedies, but we do contend that those remedies preclude any theory that this is a claim that by its nature is capable of evading review. Ms. Sanchez Haro cannot be heard to say there was no effective means of review when there plainly was and she ignored it to bring this action instead.

Nor can the Plaintiffs claim the restoration of their benefits was the result of any "litigation strategy" to "pick off" the named Plaintiffs. AHCCCS has been restoring

13

anyone found to have been incorrectly reduced in benefits since late in 2015. The Plaintiffs' cases were reviewed as soon as they were identified by the Complaint.

Without question, if this year's determinations for either Plaintiff were incorrect, AHCCCS regrets this. But there is no present controversy between these parties. The Plaintiffs say they fear future errors, but they have alleged no facts to show the Director has any practice or policy that violates the law. To the extent human error is involved, this is not something the Court can effectively prevent by injunction or declaration. If the Plaintiffs' eligibility were changed in the future in a way they believe was erroneous, they would have a wholly adequate remedy at law to appeal the change and automatically continue their benefits while their status is being examined.

Thus, even if the Plaintiffs had stated a claim under either of their two causes of action, they lack standing and their claims are moot. If there is no standing, there is no jurisdiction. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). If a case becomes moot because of intervening events, there is no jurisdiction. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 715 (9th Cir. 2011).

**CONCLUSION**

For the foregoing reasons, Director Betlach requests that the Complaint herein be dismissed. Should the Court allow the Plaintiffs to amend their Complaint, the Director respectfully requests that the schedule for briefing and argument of the pending motions for class certification and preliminary injunction be extended so that he may know what allegations he must oppose in those motions.

RESPECTFULLY SUBMITTED this 29th day of August, 2016.

**JOHNSTON LAW OFFICES PLC**

By: /s/ Logan Johnston
Logan T. Johnston
1402 E. Mescal Street
Phoenix, AZ 85020
*Attorneys for Defendant Thomas Betlach*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 29, 2016, he electronically transmitted the foregoing Defendant's Motion to Dismiss to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Ellen Sue Katz
WILLIAM E. MORRIS INSTITUTE FOR JUSTICE
3707 N. 7TH STREET, SUITE 220
PHOENIX, AZ, 85014

Martha Jane Perkins
NATIONAL HEALTH LAW PROGRAM

200 N. Greensboro St., SuiteD-13
Carrboro, NC 27510

Corilee Racela
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Blvd., Suite 750
Los Angeles, CA 90010
*Attorneys for Plaintiffs*

 /s/ Logan Johnston_____