1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Aita Darjee, et al.,                    No. CV-16-00489-TUC-RM (DTF)

10                  Plaintiffs,              **ORDER**

11   v.

12   Thomas Betlach,

13                  Defendant.

14

15          Pending before the Court is a Report and Recommendation issued by Magistrate

16   Judge D. Thomas Ferraro. Doc. 72. Judge Ferraro recommends that this Court grant

17   Defendant's Motion to Dismiss (Doc. 35) and dismiss the Complaint with prejudice, and

18   deny as moot Plaintiffs' Motion for Class Certification (Doc. 5), Plaintiffs' Motion for

19   Preliminary Injunction (Doc. 15), and the related motions to strike (Docs. 59, 62, 65).

20   Plaintiffs objected to a majority of the conclusions in Judge Ferraro's recommendation.[1]

21   Doc. 77. The Court reviews those conclusions de novo. 28 U.S.C. § 636(b)(1) ("A judge

22   of the court shall make a de novo determination of those portions of the report . . . to

23   which objection is made.").

24   . . . .

25   . . . .

26   . . . .

27   _____

28   [1] Defendant also filed an objection. Doc. 75. Defendant's only objection concerns
     a clerical error which has no bearing on the motion to dismiss. *Id.* Plaintiffs did not
     respond to this objection.

1    I.      Background

2           A.      The Complaint

3           Plaintiffs filed this putative class action on behalf of low-income Arizona

4    immigrant residents who qualify for Arizona's Medicaid program, the Arizona Health

5    Care Cost Containment System ("AHCCCS"). Compl. ¶ 1, Doc. 1. Plaintiffs allege that

6    AHCCCS, under Defendant's supervision, improperly reduced immigrant beneficiaries'

7    full-scope AHCCCS benefits to emergency-only AHCCCS benefits.[2] *Id.* ¶¶ 2, 10.

8    Plaintiffs claim that Defendant improperly transferred over 3,500 individuals, and further

9    claim that such transfers continue today. *Id.* ¶¶ 40–41. Plaintiffs seek only declaratory

10   relief affirming the unlawfulness of Defendant's practices and injunctive relief enjoining

11   further improper reductions.

12          1.      Medicaid Framework

13          In 1965, Congress created the Medicaid program by adding Title XIX to the Social

14   Security Act. 42 U.S.C. §§ 1396–1396w-5. The purpose of Medicaid is to enable each

15   state "to furnish . . . medical assistance on behalf of families with dependent children and

16   of aged, blind, or disabled individuals, whose income and resources are insufficient to

17   meet the costs of necessary medical services." *Id.* § 1396-1. To participate in Medicaid, a

18   state must implement the program through a state plan which has been submitted to and

19   approved by the Secretary of the U.S. Department of Health and Human Services. *Id.* §§

20   1396-1, 1396a(b). Arizona participates in Medicaid through the AHCCCS program. Ariz.

21   Rev. Stat. §§ 36-2901 *et seq.*

22          State plans must "provide that all individuals wishing to make application for

23   medical assistance under the plan shall have opportunity to do so, and that such

24   assistance shall be furnished with reasonable promptness to all eligible individuals." 42

25   U.S.C. § 1396a(a)(8). Regulations implementing state Medicaid plans, such as AHCCCS,

26

27          [2] Full-scope AHCCCS benefits provide medically necessary care. (Compl. ¶ 28
     (citing Ariz. Admin. Code § R9-22-202).) Emergency-only AHCCCS benefits are much
28   more limited, providing care only for conditions which place a person's health in serious
     jeopardy. (*Id.* ¶ 29 (citing Ariz. Admin. Code § R9-22-217).)

1    require that states "[c]ontinue to furnish Medicaid regularly to all eligible individuals

2    until they are found to be ineligible." 42 C.F.R. § 435.930(b).

3    The eligibility of a Medicaid beneficiary must be renewed every 12 months. *Id.* §

4    435.916(a). Recertification is required to be done through an *ex parte* process, whereby a

5    state makes the eligibility redetermination without requiring information from the

6    beneficiary, if able to do so based upon reliable information already available to the state.

7    *Id.* § 435.916(a)(2). If a state cannot make the eligibility redetermination based upon

8    available data, it must send the beneficiary a "pre-populated renewal form" requesting

9    only the information needed to renew eligibility. *Id.* § 435.916(a)(3).

10    Generally, immigrants who enter the United States after August 22, 1996 do not

11    qualify for Medicaid unless they have been "qualified aliens" for 5 years, as that term is

12    defined in the code. 8 U.S.C. § 1613(a). Certain immigrants are exempt from this

13    requirement, including refugees and victims of domestic battery. *Id.* §§ 1613(a)–(b),

14    1641(c).

15    **2.    Defendant's Alleged Practices**

16    Plaintiffs allege their counsel sent AHCCCS a letter in October 2015 concerning

17    the improper reduction of immigrant beneficiaries' Medicaid benefits. Compl. ¶ 9. In

18    response, AHCCCS admitted that the errors were caused by its computer systems and

19    worker errors.[3] *Id.* AHCCCS subsequently admitted that over 3,500 immigrants were

20    improperly transferred to emergency-only benefits. *Id.* The improper transfers continue to

21    the present, and some immigrant beneficiaries have had their benefits improperly reduced

22    a second time. *Id.* ¶ 41.

23

24    [3]    For example, the computer system improperly applied the 5-year requirement to those who were exempt from it. Thus, a refugee who recently became a

25    legal permanent resident would be processed as a qualified alien with less than the required 5 years, rather than as an exempt refugee. Compl. ¶ 45.

26    Plaintiffs also allege on information and belief that Medicaid redeterminations are processed through the Health-e Arizona Plus ("HEAPlus") system, and food stamp

27    eligibility determinations are processed through the AZTECS system. *Id.* ¶¶ 42–43. While thousands of immigrants were improperly transferred to emergency benefits under

28    the HEAPlus system, they were properly found eligible for food stamps under the AZTECS system. *Id.* ¶ 44.

Plaintiffs allege that Defendant fails to process eligibility renewals consistent with the *ex parte* process mandated by federal law. *Id.* ¶¶ 32, 51. Specifically, federal law requires States to make the eligibility redeterminations without requiring information from the beneficiary, if able to do so based on reliable information already available to the States. *Id.* ¶ 32. If a State must obtain additional information, it must use a pre-populated form which seeks only the missing information. *Id.* The purpose of the *ex parte* process is to reduce errors that occur at recertification and lessen the burden on beneficiaries to submit duplicative or unchanging information. *Id.*

Arizona Administrative Code § R9-22-306(c) is Arizona's method of implementing the *ex parte* process. *Id.* ¶ 46. This rule is not as comprehensive as the federal regulation. *Id.* Additionally, Defendant's policy manual, which instructs workers how to process renewals, does not implement the *ex parte* process. *Id.* ¶¶ 47–48. The manual lists information that does not need to be obtained for benefit renewal determinations. *Id.* ¶ 48. Immigrant alien numbers, which are similar to social security numbers, are not included on this list. *Id.* Plaintiffs allege on information and belief that Defendant's employees improperly request alien numbers at each recertification, which can lead to errors in the renewal decision. *Id.*

The manual lists "non-citizen status" as not needing to be verified at renewal unless there has been a change in immigration status. *Id.* ¶ 49. Plaintiffs allege on information and belief that Defendant's employees routinely ask about immigration status at each recertification although such information is readily available in each beneficiary's case file. *Id.* This too can lead to errors in the renewal decision. *Id.*

Plaintiffs also allege deficiencies in the notices Defendant sends to those who are transferred from full-scope benefits to emergency-only benefits. *Id.* ¶ 52. Federal law requires the notices to contain a statement of what action is being taken, "a clear statement of the specific reasons" for the action, the specific regulations or the change in law that requires the action, and an explanation of the hearing process for appeals. *Id.* ¶¶ 33–37 (citing 42 C.F.R. § 431.210).

According to Plaintiffs, the notices state that the beneficiary's "Medical Assistance Changed," the beneficiary's "full medical services" will "stop," and "Federal Emergency Services" will "start." *Id.* ¶ 53. The reason for this action is "your immigration status does not let you get full medical services." *Id.* The notices do not explain the difference between emergency and full-scope benefits or provide a meaningful explanation for the change in eligibility. *Id.* Recipients of the notice would not be able to tell whether Defendant made a mistake. *Id.* Additionally, the notices contain legal citations without explanation; they incorrectly inform the recipient that they can review portions of their case file; and information about "Options to Continue Benefits" is confusing. *Id.* ¶ 55.

### 3.   Plaintiff Aita Darjee

Plaintiff Aita Darjee ("Darjee") is a refugee from Nepal who lives in Tucson, Arizona. *Id.* ¶ 8. Prior to 2016, Darjee, her husband, and her minor child all received full-scope benefits without interruption. *Id.* Plaintiffs allege that the Darjees' full-scope benefits have been improperly reduced to emergency-only benefits twice since 2015. *Id.* ¶¶ 58–59. Defendant restored the benefits after the first error, and restoration of her benefits from the second error is "imminent if not complete." *Id.*

Darjee suffers from a cold approximately 4-5 times per month, and she goes to the doctor when her symptoms "get bad" so that she can be put on a machine that makes her feel better. *Id.* ¶ 64. She also suffers from a gastric problem for which she takes medication. *Id.* ¶ 65. Darjee's husband suffers from diabetes, high blood pressure, high cholesterol, and asthma, and he takes several medications to treat these conditions. *Id.* ¶ 60. Darjee's son must see a doctor before he starts school, and he also has an allergy for which a doctor prescribed a lotion. *Id.* ¶ 66.

Darjee learned about the second reduction in benefits after a doctor's office called and canceled her husband's appointment; she did not receive any notice explaining the reduction. *Id.* ¶ 62. The Darjees fear they will lose their benefits again and are worried about their health if they cannot see doctors and obtain medications. *Id.* ¶¶ 67, 69–70.

- 5 -

### 4.      Plaintiff Alma Sanchez Haro

Plaintiff Alma Sanchez Haro ("Sanchez Haro") is a resident of Tucson who received full-scope AHCCCS benefits based on her status as a battered immigrant who entered the United States prior to 1996. *Id.* ¶ 9. Sanchez Haro became a legal permanent resident in January 2015. *Id.* ¶ 73. In April 2016, Sanchez Haro received a notice that she was no longer eligible for full-scope benefits and would receive emergency-only benefits. *Id.* ¶¶ 75, 77. Sanchez Haro could not understand from the notice why she was no longer eligible, so she called the phone number printed on the notice to inquire about the change to her benefits. *Id.* ¶¶ 75–76.

Sanchez Haro was informed that she was ineligible because she had not been a legal permanent resident for 5 years. *Id.* ¶ 76. Although Sanchez Haro entered the United States prior to 1996 and was a victim of domestic battery, both of which exempt her from the 5-year requirement, she was further informed (incorrectly) that the law had changed in January 2016. *Id.* ¶¶ 24, 26–27, 76.

Sanchez Haro suffers from severe depression, anxiety, type II diabetes, high blood pressure, high cholesterol, and muscle cramps. *Id.* ¶¶ 78–79. She takes several medications for these conditions. *Id.* She sees a doctor once per month at La Frontera for her depression and anxiety issues, and she receives all other medical care from El Rio. *Id.* ¶¶ 78, 80.

Now that Sanchez Haro is no longer receiving full-scope benefits, she has not been able to see a doctor at El Rio, which now wants her to pay for her appointments, and she is not guaranteed future care at La Frontera, which is attempting to find an insurance company to pay for her care. *Id.* ¶¶ 81, 83. Although she is receiving her medication, she worries that the pharmacy will start making her pay for them, and she is stressed about her future health. *Id.* ¶¶ 81–85.

### 5.      Plaintiffs' Claims

Based on the foregoing, Plaintiffs assert two Counts. In Count 1, Plaintiffs allege that Defendant is violating § 1396a(a)(8)'s "reasonable promptness" requirement by

improperly reducing the benefits of eligible immigrant residents from full-scope to emergency-only. In Count 2, Plaintiffs allege Defendant is violating the Due Process Clause of the United States Constitution by sending deficient notices to immigrant residents who had their benefits reduced.

### B.    Motion to Dismiss and Report and Recommendation

Defendant moved to dismiss the Complaint on August 29, 2016. Def.'s Mot. Dismiss, Doc. 35. Defendants argued that (1) Plaintiffs failed to state a claim under 42 U.S.C. § 1396a(a)(8) because the statute applies only to initial applications for Medicaid benefits and, therefore, does not provide a cause of action for errors caused on renewals; (2) Plaintiffs failed to state a due process claim because they allege no facts showing that Defendant failed to comply with the statutory notice requirements; and (3) Plaintiffs lack standing to pursue their claims or their claims are moot. *Id.*

Plaintiffs opposed. Pls.' Opp'n, Doc. 38. Plaintiffs argued the Complaint contains sufficient factual allegations to state a claim for statutory and due process violations. *Id.* They further argued that they do have standing and their claims are not moot. *Id.* Finally, Plaintiffs requested leave to file an amended complaint should the Court determine that any of Defendant's arguments have merit. *Id.* at 17.

On October 25, 2016, Judge Ferraro issued a Report and Recommendation recommending that this Court grant Defendant's motion and dismiss this action. R. & R. 18, Doc. 72. Judge Ferraro found that Plaintiff Darjee did not have standing to bring her claims when this action was filed, and although Plaintiff Sanchez Haro had standing, her claims became moot once her full-scope benefits were restored.[4] *Id.* at 6–8.

Alternatively, Judge Ferraro recommended that the Complaint be dismissed because Plaintiffs failed to state a claim. *Id.* at 9. Regarding Count 1, Judge Ferraro agreed with Defendant and found that (1) the plain language of 42 U.S.C. § 1396a(a)(8) did not support a cause of action for benefit-renewal errors, and (2) Plaintiffs did not

---

[4] Sanchez Haro's full-scope benefits were restored on August 22, 2016, subsequent to the filing of the Complaint. *See* Doc. 33.

provide sufficient factual allegations linking Plaintiffs' benefit reduction to an unlawful policy or practice. *Id.* at 13. Regarding Count 2, Judge Ferraro found that Darjee could not state a due process claim because she did not receive a benefit-reduction notice at all, and Sanchez Haro failed to state a claim because there are insufficient factual allegations explaining why the notice is insufficient. *Id.* at 16–17.

## II.    Standing

### A.    Legal Principles

"[A]ny person invoking the power of a federal court must demonstrate standing to do so. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). When evaluating whether a plaintiff has standing, courts look to the facts as they existed when the complaint was filed. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (citing *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006)).

Standing relates to the Court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). It is therefore proper to raise this issue in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.* Depending on whether the attack on subject matter jurisdiction is "factual" or "facial," courts may look beyond the allegations of the complaint in determining whether a plaintiff lacks standing. *Id.*

"'A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). "[A] facial attack is easily remedied by leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653." *Id.*

"By contrast, a factual attack contests the *truth* of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* at 614 (emphasis in original). A factual attack imposes upon the plaintiff "an affirmative obligation to

support jurisdictional allegations with proof." *Id.* Additionally, upon a factual attack, courts may consider "matters of public record without having to convert the motion into one for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citations omitted).

## B.    Discussion

### 1.    Plaintiff Darjee

Defendant argued that Darjee lacks standing because, when the Complaint was filed, "restoration of the Darjees' benefits was 'imminent if not complete.'" Def.'s Mot. Dismiss 11 (quoting Compl. ¶ 59). Judge Ferraro accepted this argument and found that Darjee lacks standing for Count 1. R. & R. 7. Defendant's argument is a facial attack on Darjee's standing because it assumes the truthfulness of the Complaint's allegations.

Plaintiffs objected to Judge Ferraro's finding on two grounds. First, Plaintiffs argued they were not given the presumption of standing afforded those who are subjected to unlawful government action. Pls.' Objs. 3, Doc. 77 (citing *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011)). Second, Plaintiffs argue that the Complaint's allegations suffice to show Darjee has standing. *Id.* at 4–7.

The Supreme Court has stated:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Defenders of Wildlife*, 504 U.S. at 561–62. The Ninth Circuit described the foregoing passage as creating a "presumption" of standing for plaintiffs who "seek injunctive relief when [they are] the direct object of regulatory action challenged as unlawful[.]" *Sebelius*, 638 F.3d at 655. Here, Darjee was subject to the governmental action challenged in her Complaint: Defendant's allegedly unlawful policies or practices caused the improper

1  reduction of Darjee's benefits on two occasions. Assuming the truthfulness of Plaintiffs'

2  allegations, a favorable judgment would redress Darjee's injury by requiring Defendant

3  to comply with federal law, thereby preventing further reductions. This is sufficient to

4  support Darjee's claim of standing.

5       The Court is not convinced that Darjee lacks standing because Plaintiffs alleged

6  that restoration of her benefits was imminent. It is true that a past injury by itself is

7  generally insufficient to seek injunctive relief. *Steel Co. v. Citizens for a Better Env't*, 523

8  U.S. 83, 108 (1998) (holding that a generalized interest in deterrence is insufficient to

9  confer standing). Plaintiffs who seek injunctive relief must allege a future injury that is

10  "certainly impending"; allegations of a "possible" injury are insufficient. *Whitmore v.*

11  *Arkansas*, 495 U.S. 149, 158 (1990). Here, Darjee fears that another improper reduction

12  will occur. Compl. ¶ 70. Defendant allegedly conceded that some 3,500 immigrants had

13  their benefits reduced, and errors allegedly continue despite Defendant's assertion that

14  the purported cause was corrected. *Id.* ¶¶ 40–41. Given that Darjee's benefits were

15  reduced twice within a single year, and the second reduction came months after

16  Defendant acknowledged errors were occurring, Darjee has alleged a sufficient threat of

17  impending injury. *See Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("[T]he court

18  must construe the complaint in the light most favorable to plaintiff, taking all her

19  allegations as true and drawing all reasonable inferences from the complaint in her

20  favor.").

21       Turning to Count 2, Judge Ferraro found that Darjee lacks standing to pursue the

22  due process claim because she specifically pled that she did not receive a notice. R. & R.

23  7. She thus could not have been injured by the notice. *Id.*

24       Plaintiffs' due process claim is premised on the alleged substantive deficiency of

25  the notices. Compl. ¶¶ 52–55; *see* Pls.' Objs. 18 ("The heart of Plaintiffs' due process

26  claim is when Defendant reduced their benefits from full to emergency-only medical

27  services, Defendant then sent a benefits notice that failed to provide adequate information

28  for the reason for the action."). Darjee did not receive a notice regarding the reduction of

her benefits. *Id.* ¶ 62. At first glance, it would seem incongruous to hold that Darjee lacks standing to pursue the due process claim when the notice would allegedly have been of no use to her anyway. This may seem especially unfair when one acknowledges that the absence of required notice is a violation of due process. *NewGen*, F.3d at 615 n.5 ("The essence of due process is the requirement of notice and an opportunity to respond." (citing *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976))).

However, Plaintiffs chose to predicate their claim on the notices' content. Darjee's lack of exposure to that content necessarily precludes the existence of an injury from it. She thus lacks standing to pursue Count 2.[5]

### 2. Plaintiff Sanchez Haro

Judge Ferraro found that Sanchez Haro had standing to pursue both Counts when the Complaint was filed. R. & R. 7. Defendant did not object to this finding. *See* Doc. 75. After reviewing for clear error, *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 960 (D. Ariz. 2015), the Court agrees and accepts Judge Ferraro's finding.

## III.   Mootness

### A.   Legal Principles

Like standing, mootness pertains to the Court's subject matter jurisdiction and is properly raised in a Rule 12(b)(1) motion to dismiss. *White*, 227 F.3d at 1242. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). If the same personal interest required for standing does not continue throughout the action, the case is moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citing *Arizonans for Official English*, 520 U.S. at 68 n.22).

. . . .

---

[5]   Because Darjee may be able to state a due process claim predicated on a theory of deprivation of any notice, her claim under Count 2 will be dismissed without prejudice.

B.      **Discussion**

1.      **Plaintiff Darjee**

Judge Ferraro reasoned that the mootness doctrine was inapplicable to Darjee because she lacks standing. R. & R. 8 (citing *Friends of the Earth*, 528 U.S. at 191). The Court agrees with respect to Count 2. Because Darjee does not have standing to pursue Count 2, she cannot show an ongoing live controversy. *See Friends of the Earth*, 528 U.S. at 191.

However, as discussed above, standing for injunctive relief requires a plaintiff to show a sufficient threat of future injury. *Whitmore*, 495 U.S. at 158. This Court's finding that Darjee has standing to pursue injunctive relief on Count 1 necessarily means there is presently a live controversy. Accordingly, her claim under Count 1 is not moot.

2.      **Plaintiff Sanchez Haro**

Judge Ferraro found that Sanchez Haro's claims were moot and did not fall under the "capable of repetition yet evading review" exception. R. & R. 8–9. Plaintiffs objected to these findings, arguing their claims were not moot, or, alternatively, fell within the aforementioned exception. Pls.' Objs. 7–10.

The Court concludes that Sanchez Haro's claims are not moot. Like Darjee, Sanchez Haro was allegedly injured by Defendant's unlawful policies and practices. Although her benefits were reduced only once, she remains subject to the same risk of future reductions caused by the same policies and practices. Accordingly, a live controversy exists and her claim under Count 1 is not moot.

Turning to Count 2, Sanchez Haro alleges she was unable to understand from the notice why her benefits were reduced. Plaintiffs allege the boilerplate notices lack information required by statute. The notices are sent to all beneficiaries who are transferred from full-scope benefits to emergency benefits. At this point, it is reasonable to infer from the Complaint that Sanchez Haro, who is allegedly at risk of losing her benefits, is also at risk of receiving the notice again. Accordingly, Sanchez Haro's claim under Count 2 is not moot.

1    **IV.    Failure to State a Claim**

2        **A.    Legal Standard**

3          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

4 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th

5 Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the

6 absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

7 *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough

8 facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

9 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

10 factual content that allows the court to draw the reasonable inference that the defendant is

11 liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12          In determining whether a complaint states a claim on which relief may be granted,

13 the court accepts as true the allegations in the complaint and construes the allegations in

14 the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73

15 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court

16 need not assume the truth of legal conclusions cast in the form of factual allegations.

17 *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While

18 Rule 8(a) does not require detailed factual allegations, "it demands more than an

19 unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A

20 pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic

21 recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*,

22 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by

23 mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume

24 that the plaintiff "can prove facts which it has not alleged or that the defendants have

25 violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of*

26 *Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

27          In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is

28 permitted to consider material which is properly submitted as part of the complaint,

documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### B.    Count 1 – Violation of 42 U.S.C. § 1396a(a)(8)

#### 1.    Plaintiffs' Claim is Cognizable Under § 1396a(a)(8)

Section 1396a(a)(8) provides that state Medicaid plans must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]" After analyzing the cases cited by both parties, none of which he found on point, Judge Ferraro found that Plaintiffs' claim is not cognizable under the plain language of 42 U.S.C. § 1396a(a)(8). R. & R. 13. Judge Ferraro agreed with Defendant and found that, because § 1396a(a)(8) was enacted to prevent waiting lists, it applies only to initial applications for Medicaid and not to subsequent renewal determinations. *Id.* (citing *Sobky v. Smoley*, 855 F. Supp. 1123 (D. Ariz. 1994)). Plaintiffs received full benefits for years and continued to receive benefits after the improper reduction, albeit in a reduced scope; thus, § 1396a(a)(8) does not apply to Plaintiffs' claims. *Id.*

Plaintiffs objected to this finding. Pls.' Objs. 10–18. They argue that cases examining § 1396a(a)(8) establish that the provision extends beyond initial applications and covers prompt access to medical care in general. *Id.* at 13 (citing *O.B. v. Norwood*, 838 F.3d 837 (7th Cir. 2016); *Rosie D. v. Romney*, 410 F. Supp. 2d 18 (D. Mass. 2006)). Contrary to Judge Ferraro's finding, Plaintiffs argue, a violation of the "reasonable promptness" provision occurs where the state fails to promptly provide *all* medical services for which the beneficiary is eligible. *Id.* Accordingly, the prompt provision of only *some* services—here, emergency benefits instead of full-scope benefits—does not save the state from violating § 1396a(a)(8). *Id.*

At the outset, the Court does not agree with Defendant that § 1396a(a)(8) "[o]n its face . . . applies [only] to initial applications, not renewals." Def.'s Mot. Dismiss 4.

Nothing in the plain language limits the "reasonable promptness" requirement to the initial provision of medical assistance. Moreover, § 1396a(a)(8) must be read in conjunction with other Medicaid statutes and implementing regulations. *U.S. v. McIntosh*, 833 F.3d 1163, 1176 (9th Cir. 2016) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation and quotation marks omitted)).  "Medical assistance" is defined as including payment for services and the services themselves. 42 U.S.C. § 1396d(a). Medical assistance must be "furnished" to eligible persons, which means both that services must be initially provided without delay—which Defendant asserts is all it means—*and* be provided continually until a person is found ineligible. 42 C.F.R. § 435.930(a)–(b). Therefore, "furnishing" "medical assistance" with reasonable promptness includes the prompt provision of medical services even *after* the initial eligibility determination and commencement of benefits.

Defendant argues that he provides medical assistance promptly, and the Complaint fails because "it alleges a failure to make determinations *correctly*, rather than a failure to complete them *promptly*." Def.'s Mot. Dismiss 4 (emphasis in original). First, Defendant ignores the obvious inference arising from an incorrect eligibility determination: Defendant cannot promptly provide the services for which a beneficiary is eligible if he incorrectly determines the beneficiary is not eligible for those services. Second, Defendant provides no direct citation for his argument. This is not surprising; the assertion that inaccuracy is acceptable, so long as it is prompt, is an odd one.

Defendant relies on the *Sobky* court's discussion regarding an analogous "reasonable promptness" provision contained elsewhere in the Social Security Act. 855 F. Supp. at 1148 (citing *Jefferson v. Hackney*, 406 U.S. 535, 545 (1972)). However, while *Sobky* and *Jefferson* acknowledge that the "reasonable promptness" provision prohibits waiting lists, neither case holds that it exists *only* to prohibit waiting lists. Indeed, the Supreme Court's explanation of the Social Security Act's requirement indicates the purpose is broader: "The statute was intended to prevent the States from denying benefits

- 15 -

even temporarily, to a person who has been found fully qualified for aid." *Jefferson*, 406 U.S. at 544–45.

Further, case law supports Plaintiffs' assertion that § 1396a(a)(8) extends beyond the initial processing of Medicaid applications. In *Norwood*, the state determined that the plaintiff, a minor who was already receiving Medicaid benefits, was eligible for subsidized home-nursing care. 838 F.3d at 839. However, the state offered no assistance to the plaintiff's parents in finding nurses, which caused the plaintiff to remain in the hospital for almost a year before being sent home. *Id.* at 840. Both the district and circuit courts found a likelihood that plaintiff would prevail on his claim that the state failed to arrange, with reasonable promptness, the home nursing to which he was entitled. *Id.* at 840–42.

The Fourth Circuit addressed a similar issue in an unpublished opinion. *Doe v. Kidd*, 419 Fed. Appx. 411 (4th Cir. 2011). *Kidd* involved a Medicaid waiver program which permitted the state to waive the requirement that persons with mental retardation live in an institution in order to receive Medicaid. *Id.* at 413. As part of the waiver program, the state determined which among three environments, each with varying degrees of restrictiveness, was most appropriate for the applicant. *Id.* at 351–53. The plaintiff, who was already receiving Medicaid benefits, applied and was found eligible for the program. *Id.* at 414. The state determined that a less restrictive environment was appropriate for plaintiff. *Id.* However, she spent multiple years in a more restrictive facility while awaiting placement in a less restrictive facility. *Id.*

The Fourth Circuit held as a matter of law that the state violated the Medicaid Act by failing to place plaintiff in an appropriate facility in a reasonably prompt manner. *Id.* at 415. The court disagreed that the state's subsidization of plaintiff's stay in the more restrictive facility precluded a violation of § 1396a(a)(8) because, as the state argued, plaintiff was being provided with *some* service in a prompt manner, albeit not the service for which she was eligible. *Id.* at 417. In other words, the state's provision of a service other than the one for which plaintiff was eligible was "the same as a failure to provide

any services." *Id.*

Although not binding, the foregoing authority persuades the Court that violations of the "reasonable promptness" provision are not limited to delays in processing initial Medicaid applications. Further, the fact Defendant provided *some* level of benefits (i.e., emergency benefits) does not by itself preclude a violation of § 1396a(a)(8), since Plaintiffs allegedly were eligible at all times for full benefits. *See Kidd*, 419 Fed. Appx. at 417. Plaintiffs' claim for delay in medical services is thus cognizable under § 1396a(a)(8).

### 2.      Plaintiffs State a Claim

Judge Ferraro alternatively found that, even if Plaintiffs' claims are cognizable under § 1396a(a)(8), Plaintiffs failed to sufficiently allege facts demonstrating they are entitled to relief. R. & R. 14. First, Plaintiffs alleged the improper reductions "were" caused by a computer programming error, the use of "were" indicating that the error was fixed and is not continuing. *Id.* Second, there are no factual allegations linking the two named Plaintiffs' injuries to any of Defendant's other alleged unlawful policies or practices. *Id.* at 15.

Plaintiffs argue they were not given the benefit of all favorable inferences. Pls.' Objs. 15–18. First, according to Plaintiffs, their use of the term "were" was taken out of context, and this Court should infer that the computer errors continue because Plaintiffs did not allege the errors were fixed. *Id.* at 15–16. Second, Plaintiffs allege they provide sufficient factual allegations to plausibly allege injury from Defendant's conduct. *Id.* at 16–17. Finally, Plaintiffs argue that, if their allegations are deficient, they must be allowed leave to amend. *Id.* at 17–18.

Viewing the allegations in the light most favorable to Plaintiffs, the Court does not find that Plaintiffs' use of "were" is an admission that the computer error was fixed. In late 2015, Defendant informed Plaintiffs' counsel that a computer error caused the eligibility problems. Compl. ¶ 40 ("AHCCCS admitted the eligibility errors were caused by its computer systems"). In Paragraph 40, Plaintiffs summarized Defendant's

allegations without admitting their truthfulness. Beyond Paragraph 40, nothing in the Complaint indicates that Plaintiffs accept Defendant's claim that the error has been fixed.[6]

To the contrary, the Complaint may plausibly be read as alleging that Plaintiffs' injuries were caused in part by a continuing computer error. In the very next paragraph, Plaintiffs allege that "[t]he improper reductions . . . continue."[7] *Id.* ¶ 41. This is supported by the allegations that Darjee and Sanchez Haro's benefits were improperly reduced in 2016 – months after Defendant conceded a computer error contributed to the reductions. *Id.* ¶¶ 41, 59, 72. Further, Plaintiffs allege that the beneficiaries whose benefits were improperly reduced under the HEAPlus computer system were properly found eligible for food stamps under the AZTECS computer system, which may support the existence of a continuing problem in the former system. *Id.* ¶¶ 42–44.

Under a liberal construction, the foregoing allegations reasonably support an inference that the error has not been fixed and did contribute to Plaintiffs' alleged reductions. Those reductions in benefits allegedly prevented Plaintiffs from accessing the medical care to which they were entitled, in violation of § 1396a(a)(8)'s "reasonable promptness" requirement. Therefore, Plaintiffs have sufficiently stated at least one ground to support their claims under Count 1, and the Court need not address whether Plaintiffs sufficiently alleged injury caused by Defendant's failure to adhere to the *ex parte* renewal process.

## C.   Count 2 – Violation of Due Process

Judge Ferraro found that the Complaint lacks sufficient factual information to support Plaintiffs' due process claim. R. & R. 16–17. He found that, while the Complaint detailed the various regulations dictating the notices' content, Plaintiffs failed to allege

---

[6]   The record indicates Plaintiffs do not accept Defendant's claim. *See* Pls.' Objs. 15–16.

[7]   Defendants argue the Complaint's allegations are insufficient because Plaintiffs do not specifically allege that the computer error continues. Def.'s Resp. to Pls.' Objs. 4, Doc. 78. The Court does not read the Complaint so narrowly.

that the notice received by Sanchez Haro lacked that information. *Id.* Further, Judge Ferraro dismissed as conclusory the allegations that the notice lacked a "meaningful explanation" regarding the reduction in benefits, and that certain language was "confusing." *Id.* Plaintiffs objected to these findings, arguing that Judge Ferraro failed to consider all relevant factual allegations and draw all reasonable inferences in Plaintiffs' favor. Pls.' Objs. 18.

States are prohibited from terminating a Medicaid recipient's benefits without first providing adequate notice and a hearing. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); *Perry v. Chen*, 985 F. Supp. 1197 (D. Ariz. 1996); 42 C.F.R. § 431.210. The Complaint details what information must be contained within the notices. Compl. ¶¶ 33–38 (citing various statutes and regulations). Among the various requirements is a "clear statement of the specific reasons supporting the intended action[.]" 42 C.F.R. § 431.210(b).

Judge Ferraro correctly recognized that Plaintiffs do not specifically allege that the disputed notices lack the required information. However, a liberal construction of the Complaint reasonably supports an inference that at least some of the required information is missing. Plaintiffs allege the notices provide that the beneficiary's "full medical services" will "stop" and "Federal Emergency Services" will "start" because "your immigration status does not let you get full medical services." Compl. ¶ 53. Sanchez Haro received this notice and did not understand why her benefits were changed. *Id.* ¶¶ 75–76. She had to call and ask someone why her benefits changed. *Id.* ¶ 76.

The foregoing allegations support an inference that "your immigration status does not let you get full medical services" is not a "clear statement of the specific reason" for reducing Sanchez Haro's benefits. 42 C.F.R. § 431.210(b). As Plaintiffs point out, the proffered reason could have a number of meanings, e.g., Sanchez Haro's immigration status changed unbeknownst to her, or Defendant changed which immigration statuses are eligible for full benefits. Sanchez Haro's inability to understand the notice's reason for the reduction supports an inference that the notice is "confusing" and is not in

1    compliance with federal regulations and due process.[8]

2          A motion to dismiss may not properly be granted if the plaintiff states at least one

3    cognizable ground for relief. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811

4    (1993) (courts should only dismiss a complaint where "it appears beyond doubt that the

5    plaintiff can prove no set of facts in support of his claim" (citations and internal quotation

6    marks omitted)). Plaintiffs have stated at least one ground for both Counts. The motion

7    must therefore be denied.[9]

8          Accordingly,

9          **IT IS HEREBY ORDERED** that Judge Ferraro's Report and Recommendation

10   (Doc. 72) is **accepted and adopted in part** and **rejected in part**.

11         **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 35) is

12   **granted in part** and **denied in part** as follows:

13         1.    Plaintiff Aita Darjee's claim under Count 2 is dismissed without prejudice.

14         2.    Defendant's Motion is otherwise denied.

15         Dated this 31st day of March, 2017.

16

17

18                                          Honorable Rosemary Márquez
                                            United States District Judge
19

20

21

22

23

24   _____

25         [8]    The Court is not convinced that a notice is sufficient if it causes the
     recipient to take action. At this juncture, the allegation that Sanchez Haro called the
26   phone number on the notice for an explanation is equally supportive of an inference that
     the notices are legally defective.
27
           [9]    The pending motions to strike (Docs. 59, 62, 65), motion for preliminary
28   injunction (Doc. 15), and motion for class certification (Doc. 5) will be addressed in a
     separate Order.