# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Aita Darjee, et al.,

　　　　　Plaintiffs,

v.

Thomas Betlach,

　　　　　Defendant.

No. CV-16-00489-TUC-RM (DTF)

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiffs' Renewed Motion for Class Certification, or in the Alternative, to Take Plaintiffs' Motion Under Advisement and for Class Discovery. (Doc. 113.) The motion is fully briefed and the Court has heard oral argument. (Docs. 116, 117, 119, 128, 133, 135, 158, 159, 160, 161, 164, 166, and 168.) As explained below, this Court recommends that the District Court **deny** Plaintiffs' motion for class certification. The Court addresses Plaintiffs' request for class discovery (Doc. 144) in a separate order.

**Background**

Plaintiffs Aita Darjee and Alma Sanchez Haro (Plaintiffs) are Medicaid beneficiaries who receive full scope medical benefits through the Arizona Health Care Cost Containment System (AHCCCS) and who seek to enforce their right under 42 U.S.C. § 1396a(a)(8), which provides:

A State plan for medical assistance must –
…
(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such

> assistance shall be furnished with reasonable promptness to all eligible individuals[]

42 U.S.C. § 1396a(a)(8).

Plaintiffs allege that Defendant, in his capacity as the Director of AHCCCS, has violated his obligation to provide with them with medical assistance with reasonable promptness because the computer system AHCCCS utilizes (Health-e-Arizona Plus or HEAPlus) causes errors that result in Plaintiffs receiving emergency-only (referred to as "FES") benefits. (Doc. 1.) Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23(b)(2):

> All immigrant residents of Arizona eligible for full-scope Arizona Health Care Cost Containment System (AHCCCS) benefits who, on or after January 1, 2015 have been or will be required to recertify their eligibility for AHCCCS through the Health-e-Arizona Plus computer system and whose benefits have been or will be reduced from full-scope AHCCCS to emergency-only AHCCCS.

(Doc. 113 at pp. 1-2.)

<u>Plaintiffs' First Motion for Class Certification (Doc. 5)</u>

Shortly after filing the complaint, Plaintiffs moved for class certification. (Doc. 5.) That motion was denied. The District Court determined that Plaintiffs failed to meet their burden of establishing the commonality and typicality requirements of Federal Rule of Civil Procedure 23. (Doc. 86.) Plaintiffs failed to establish commonality because they failed to show that class proceedings will generate common answers. Judge Marquez explained that Plaintiffs "have shown only that each putative class member had their benefits reduced" and they failed to establish that the class members' claims for relief will produce a common answer to the question "*why were my benefits reduced*." *Id*. at p. 22. (Emphasis in original.) Regarding typicality, Plaintiffs' evidence established that Darjee's claimed injury was caused by a case worker's failure to certify her immigration status and Sanchez Haro's claimed injury occurred because she provided conflicting information regarding her immigrant status. Putative class member Stephanie Nyirandekeyho's claimed injury was caused by an eligibility worker's failure to

recognize that she was exempt from the 5-year requirement. Putative class member Adam Humed's claimed injury was caused by his erroneous reporting at the renewal stage. (Doc. 86 at p. 23.) In sum, the Plaintiffs' injuries were not caused by the same course of conduct and thus lacked typicality.

<u>Plaintiffs' Renewed Motion For Class Certification (Doc. 113)</u>

Plaintiffs' renew their request for class certification arguing that "[w]hile discovery is not yet complete, new evidence produced to-date (*sic*) describes **a sweeping problem with AHCCCS's computer system** that has already impacted hundreds of qualified immigrants since December 2016 and **which continues to improperly reduce benefits** on a daily basis." (Doc. 119 at p. 2, ll. 20-23.) (Emphasis added.) Plaintiffs contend discovery has revealed that Plaintiff Sanchez Haro's benefits were reduced in March 2017 "because the [HEAPlus computer] failed to recognize her qualifying immigration status." *Id*. at p. 5, ll. 22-23. Plaintiffs argue Sanchez Haro's benefit reduction was as a result of HEAPlus's flawed presentation of her immigration status. *Id*. at p. 6, ll. 1-3. Plaintiffs argue that Defendant's use of the HEAPlus system puts the putative class members at risk for a benefit reduction from full scope AHCCCS benefits. (Doc. 166 at p. 4, ll. 13-17.)

Defendant opposes class certification arguing that any incorrect eligibility determinations are corrected in a reasonably prompt manner. (*See, e.g*., Doc. 128 at pp. 2-3; Doc. 164 at p. 2.) Defendant also argues that the HEAPlus system only identifies a **potential** eligibility determination of reduced-scope AHCCCS benefits. Only a trained DES eligibility worker can reduce a recipient's benefits and the HEAPlus system does not modify or change data. (Doc. 128 at p. 2, 7, 10.) Additionally, it is AHCCCS policy and procedure that DES eligibility workers triple check any potential FES determination for accuracy. *Id*. at p. 7, and Ex. F.

As more fully explained below, Plaintiffs have not affirmatively demonstrated that Defendant fails to furnish medical assistance with reasonable promptness. Plaintiffs' argument that they meet the statutory requirement by showing wrongful benefit reduction

is without legal support. Even assuming such evidence satisfied the statutory requirement Plaintiffs have failed to affirmatively demonstrate that incorrect eligibility determinations are not corrected with reasonable promptness. Plaintiffs' allegation of a "sweeping problem with AHCCCS's computer system" is unsupported. The decision to reduce benefits can only be made by a trained DES eligibility worker. The requirement of Rule 26(b)(2) is not met because the benefit reductions occur for a variety of reasons and, therefore, injunctive relief for the class as a whole is inappropriate.

### Rule 23, Fed. R. Civ. P., Requirements

The party seeking class certification must affirmatively demonstrate that (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. P. 23). (Quotations omitted.) Because the District Court denied Plaintiffs' first motion for class certification determining that Plaintiffs failed to affirmatively demonstrate commonality and typicality, the Court begins with these two Rule 23(a) requirements. (*See* Doc. 86.)

Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* "In this case, as in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[T]he merits of the class members' substantive

claims are often highly relevant when determining whether to certify a class.") (Additional citations omitted.). "To assess whether the putative class members share a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the [class members's] claims,' [the Court] must identify the elements of the class members's case-in-chief." *Parsons*, 754 F.3d at 676 (quoting *Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014)).

In their renewed motion, Plaintiffs contend that commonality is satisfied because "each of these individuals has the same legal issue: whether the benefit reduction violates Medicaid's reasonable promptness requirement." (Doc. 166 at p. 4.) Plaintiffs further contend that the HEAPlus computer system places the putative class members "at risk" for a benefits reduction. *Id*. at p. 4, ll. 15-17 ("…each of the putative class members [are] at risk of being denied benefits…"). Plaintiffs argue that being identified by HEAPlus as possibly eligible for a reduction in benefits is a common harm that is shared by all putative class members. An examination of Plaintiffs' claim shows why this argument must fail.

A violation of § 1396a(a)(8) is established when a claimant, as an eligible person, establishes that AHCCCS **failed to furnish medical assistance with reasonable promptness**. *See* 42 U.S.C. § 1396a(a)(8) (Emphasis added). Benefit reduction does not equal a failure to furnish medical assistance required under the statute; although, a reduction in benefits might result in Defendant's failure to furnish medical assistance with reasonable promptness. Here, however, Plaintiffs have failed to affirmatively demonstrate that medical assistance was not furnished with reasonable promptness to any putative class member.

Plaintiffs rely heavily upon *Parsons v. Ryan*. There, the plaintiffs were inmates in the Arizona Department of Corrections (ADC) who alleged that the ADC's "policy and practices of statewide and systemic application exposed all inmates in ADC custody to a substantial risk of serious harm." The Ninth Circuit upheld the district court's decision to certify a class concluding, "[that] kind of claim is firmly established in our constitutional

law[]" under the Eighth Amendment. *Parsons*, 754 F.3d at 676. The Ninth Circuit determined that the Eighth Amendment to the United States Constitution protects inmates from a substantial risk of serious harm. Here, there is no authority in § 1369a(a)(8) for Plaintiffs' argument that being "at risk" for a possible failure to receive medical assistance with reasonable promptness satisfies any element in § 1369a(a)(8).

Plaintiffs also rely upon *Unan v. Lyons*, 853 F.3d 279 (6th Cir. 2017), pointing to evidentiary similarities between this case and *Unan*. Plaintiffs argue that these similarities compel the Court to grant class certification in this case. (Doc. 166 at pp. 2-3.) This Court disagrees.

In *Unan*, two plaintiffs brought a putative class action against the Director of Michigan's Department of Community Health and Human Services alleging violations of the reasonable promptness statute as a result of Medicaid benefit reductions. The district court granted the defendant's motion for summary judgment and denied as moot the plaintiffs' motions for class certification and a preliminary injunction. *Unan,* 853 F.3d at 283. The United States Court of Appeals for the Sixth Circuit reversed the district court's grant of defendant's motion for summary judgment concluding that the plaintiffs' claims were not moot and affirmed the denial of the plaintiffs' motion for summary judgment holding "that plaintiffs cannot definitively demonstrate the defendant's current patterns and practices violate the Medicaid statute." *Id.* at 291. The merit of the plaintiffs' motion for class certification was never addressed by the district court or the court of appeals. *Unan*, 853 F.3d at 295, Circuit Judge Sutton, dissenting, ("In this case, there is no certification ruling and no remaining member of the putative class either.") Plaintiffs' reliance on language contained in Justice White's concurrence that the "evidence 'established a genuine dispute of material fact regarding whether the state had complied with the Medicaid statute and had granted the plaintiff class complete relief[]'" is *dicta*. (Doc. 166 at p. 3, ll. 9-11 (quoting *Unan*, 853 F.3d at 294).)

The Court determines that Plaintiffs have not met their burden to affirmatively demonstrate that the claim of the proposed class meets the commonality requirement of

Rule 23(a). This Court rejects Plaintiffs' argument that a putative class member's risk of benefit reduction is sufficient to establish the failure to furnish medical assistance with reasonable promptness. Thus, this Court will recommend Plaintiffs' motion for class certification be denied for their failure to allege or prove that AHCCCS fails to actually furnish medical assistance with reasonable promptness.

Nevertheless, this Court examines Plaintiffs' claim that the HEAPlus computer system places the putative class members "at risk" for a benefits reduction and thus violates § 1369a(a)(8). Even assuming benefit reduction sufficed this kind of generic recitation of a shared legal issue to establish commonality was rejected by *Wal-Mart* and its progeny. In *Wal-Mart v. Dukes*, the United States Supreme Court held that the commonality provision requires a plaintiff to affirmatively demonstrate that the class members have suffered the same injury, not merely violations of the same provision of law. *See, e.g., Parsons*, 754 F.3d at 674-75. Here, there is an absence of support for any determination that medical assistance is not being provided in a reasonably prompt manner. Furthermore, the HEAPlus computer system merely identifies a **possible** reduction in AHCCCS benefits. The actual determination to reduce an AHCCCS recipient's benefits can only be made by a trained DES eligibility worker.

There are various reasons for an eligibility worker's decision to reduce a recipient's benefits. For example, Plaintiff Sanchez Haro's benefit reduction in March 2017 occurred as a result of an eligibility worker's failure, in August 2016, to indicate the grant date of her battered alien status. When Sanchez Haro came up for renewal in March 2017 the eligibility worker and supervisor could not determine that she had a prior status of battered alien. (Doc. 128 at p. 10.) Sanchez Haro's benefits were restored and she was sent a notice **prior** to the effective date of the (incorrect) benefit reduction. *Id*. at p. 10, ll. 20-22. Plaintiffs do not demonstrate that this error in eligibility determination resulted in a loss of the reasonably prompt furnishing of medical assistance.[1]

---

[1] There is mention in the record that Sanchez Haro experienced difficulty filling a prescription at a pharmacy in early May 2017 that was caused by a separate "PMMIS" system that displays AHCCCS eligibility to providers.  The PMMIS system had not been

Sanchez Haro's later 2017 benefits reduction occurred because the eligibility worker (for reasons unknown) included a medical assistance re-determination while processing a nutritional assistance application (not a medical assistance renewal application). (Doc. 164 at pp. 2-4.) Any claim of injury resulting from the later 2017 benefit reduction is not included within the class definition because this reduction did not occur as a result of a medical assistance renewal application as required by the proposed class definition. Moreover, her benefits were restored before the date that the benefit reduction was scheduled to take effect. (Doc. 128 at p. 10, ll. 20-22.) Plaintiffs fail to make a showing that this not a reasonably prompt furnishing of medical assistance.

Plaintiffs also argue the HEAPlus system does not carry forward correct information. (Doc. 117 at Ex. 19; Doc. 164 at p. 5, ll. 10-13.) Plaintiffs point to examples they claim demonstrate this flaw.  In one example, they rely upon an email from a DES eligibility worker, which they interpret as showing such a flaw.  However, a document from Social Interest Solutions (SIS), the HEAPlus system developer, demonstrates this particular benefit reduction occurred because a DES eligibility worker reviewed the claimant's old application from 2014, instead of the application from 2016. (Doc. 117 at Ex. 17; Doc. 164 at p. 5, ll. 13-20.) Hence, the email does not support Plaintiffs' assertion.

In a second example, Plaintiffs assert that the HEAPlus system erroneously fails to carry forward data provided by the federal immigration hubs known as Verify Lawful Presence (VLP) and System Alien Verification Eligibility (SAVE) thereby causing it to erroneously indicate that a recipient is possibly eligible for reduced AHCCCS benefits. (Doc. 119 at pp. 10-11.) This too is unsupported by the testimony of the sole witness responsible for maintaining the HEAPlus system.  Michael Farquhar (Farquhar) analyzes and tests systems for DES and has worked on the HEAPlus system. (Doc. 128 at p. 7, ll. 16-17; Doc. 133 at Ex. 24 at 7/8-21, 11/3-5.) Farquhar testified that he has not seen

updated immediately and caused about an hour delay in Sanchez Haro's ability to fill her prescription once AHCCCS was contacted. (Doc. 128 at p. 20, n. 5.)

- 8 -

HEAPlus fail to correctly recognize immigration status when there has been no interim change in data. (Doc. 128 at Ex. C at 123/20-124/7.) Farquhar testified that the only reason he could think of for the HEAPlus system not matching the federal VLP and SAVE responses was data entry error. Farquhar also testified that HEAPlus does carry forward data provided by the federal immigration hubs on an auto renewal application. *Id*. at 97/8-13. At the time of his testimony, Farquhar could not identify any reason for data mismatch based solely upon the HEAPlus system. *Id*. at Ex. C at 141/23-142/6.

Plaintiffs also rely upon a log of benefit reductions ("Log") that AHCCCS compiled during this litigation arguing that it shows that the HEAPlus system reduces an individual's benefits. (Doc. 117 at Ex. 2.) Plaintiffs point to the testimony of Marvin Hamman (Hamman) to support their argument. However, Hamman is a DES eligibility worker supervisor, not a DES systems department employee. (Doc. 128 at p. 7, ll. 5-6.) When asked about the Log, Hamman testified that he did not know what would cause a potential benefit reduction generated by the HEAPlus system to be incorrect and he could not provide any examples of such determinations by the HEAPlus system. *Id*. at Ex. B at 23/6-13. Hamman testified that the "systems department" may "know the reasons that the auto determinations might not have been correct." *Id*. at Ex. B. at 23/14-19.

Hamman further testified that all of the incorrect eligibility determinations contained in the Log were corrected. *Id*. at Ex. B at 154/20-24. Defendant presented evidence that out of the AHCCCS recipients that were identified to have had their benefits improperly reduced only five (5) did not receive notice of their corrected eligibility determination **before** the effective date of the benefit reductions. (Doc. 164-1 at ¶¶ 11-12.) There is nothing before the Court from which it can conclude that the medical assistance owed to these five (5) AHCCCS recipients was not furnished with reasonable promptness.

Plaintiffs argue that a proposal to make modifications to the HEAPlus system commonly referred to as System Request (SR) 392 shows that the HEAPlus system "is not a proper functioning computer system." (Doc. 119 at p. 12, ll. 24-25; Doc. 117 at Ex.

1.) The text of SR 392 provides that it is being considered to reduce the "error caused by workers incorrectly changing customers from full to emergency services[.]" (Doc. 117 at Ex. 1.) Accordingly, SR 392 does not support Plaintiffs' contention that errors in eligibility determinations occur as a result of the HEAPlus system.

Plaintiffs also rely upon tickets submitted by the DES help desk to HEAPlus developer SIS regarding issues encountered by an eligibility worker. *Id.* at Exs. 17 and 18. Relying upon Hamman's testimony, Plaintiffs argue these tickets show that the HEAPlus system is causing the eligibility workers to make improper benefit determinations. To start, DES supervisor Hamman testified that the way HEAPlus displays information does not lead to errors made by eligibility workers. (Doc. 128 at Ex. B at 91/25-92/8.) Hamman also testified that he had "no idea" what the ticket meant and he qualified his testimony by saying that the HEAPlus system "apparently" was leading the eligibility worker to an FES determination. (Doc. 117 at Ex. 10 at 127/16-27.) Without documents or testimony showing how the tickets were resolved by HEAPlus developer SIS, the tickets only establish the ticket author's belief regarding the cause of the issue being experienced.

Section 1396a(a)(8)'s reasonable promptness element is time-based. *See, e.g., C.F. v. Lashway*, 2017 WL 2574010, at \*4 (W.D. Wash., 2017) (slip copy) (denying the class certification in a case alleging a violation of § 1369a(a)(8) where the plaintiffs' proposed class definition did not have a time-based component that would allow the court to determine the scope of the proposed class). There is an absence of evidence on this temporal element. It is impossible for the Court to determine that there is a class of immigrant AHCCCS recipients that have not had medical assistance furnished with reasonable promptness.

There is also no evidence that the HEAPlus system automatically renders incorrect benefit eligibility reductions. A decision to reduce benefits can only be made by a trained DES eligibility worker and AHCCCS has instituted a triple check review process for all proposed benefit reduction decisions. (Doc. 128 at p. 5, ll. 14-17 and Ex. F.) There are

multiple reasons why an eligibility worker may decide to reduce a recipient's benefits.

Plaintiffs' have not met their burden to affirmatively demonstrate that the commonality requirement of Rule 23(a)(2) is met.

Typicality

Typicality exists if "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quoting *Hanon*, 976 F.2d at 508).

Plaintiffs argue that typicality is "easily satisfied" because they have suffered the same injury as each member of the proposed class and the injury occurred from the same course of conduct - Defendant's continued use of the HEAPlus system. (Doc. 119 at pp. 19-20.) However, the evidence establishes that the HEAPlus system only identifies cases where benefits might be reduced. The decision to reduce benefits is only made by a trained DES eligibility worker.

As mentioned above, Plaintiff Darjee's benefits were reduced as a result of a case worker's failure to verify her immigration status. (Doc. 86 at p. 3.) Plaintiff Sanchez Haro's March 2017 benefits reduction occurred because of an error of omission committed by an eligibility worker in August 2016. The record does not provide any reason for the benefit reductions that were made by trained DES eligibility workers that are displayed on the Log. (Doc. 117 at Ex. 2.) The Court determines that there is insufficient evidence to conclude that the purported class members were injured "by the same course of conduct."

Plaintiffs have not met their burden to affirmatively demonstrate that the typicality

requirement of Rule 23(a)(3) is met.

Numerosity

A proposed class satisfies the numerosity requirement when its members are so numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability refers to the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates*, *Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964). "Where a class is large in numbers, joinder will usually be impracticable." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).

Relying upon the Log, Plaintiffs argue that "hundreds of immigrants have had their benefits improperly reduced." (Doc. 119 at pp. 20-21.) As mentioned above, Defendant submits that out of the AHCCCS recipients whose benefits were improperly reduced, only five (5) did not receive notice that their benefits were reinstated to full scope benefits prior to the reduction in scope taking effect. (Doc. 164-1 at ¶¶ 11-12.) Again, Plaintiffs' claim is that medical assistance is not being furnished with reasonable promptness. As such, this Court must have some basis by which to determine whether an immigrant, whose benefits have been improperly reduced, has actually not been furnished with medical assistance for such a period of time that s/he may be considered to have not been furnished with the reasonably prompt provision of medical assistance. In this case, there is nothing from which this Court can make such a determination. *See C.F., supra*, 2017 WL 24574010, at *5 ("…given Plaintiffs' allegation that community-based habilitative services are not provided with reasonable promptness, the Court must have some basis by which to determine whether a person waiting for the required services has waited long enough to be considered a part of the proposed class. Without this guideline, the Court cannot determine, based merely on a disputed estimate, whether Plaintiffs have established numerosity.").

Plaintiffs have not met their burden to affirmatively demonstrate that the numerosity requirement of Rule 23(a)(1) is met.

…

- 12 -

Adequacy of Representation

The adequacy of representation requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-158, n.13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (quoting *East Tex. Motor Freights System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). (Additional citations omitted.)

The Court determines that if the other requirements of Rule 23(a) were satisfied, Plaintiffs Darjee and Sanchez Haro would be adequate class representatives.

**Rule 23(b)(2), Fed. R. Civ.  P., Requirements**

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). ""Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360-61. "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

The Court determines that Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" is not satisfied. As mentioned above, errors in AHCCCS benefit reductions are caused by DES eligibility workers for a variety of reasons. *Wal-Mart* held that Rule 23(b)(2) does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. *Wal-Mart*, 564 U.S. at 360.

This Court determines that the District Court could not issue final injunctive relief

with respect to the class as a whole. Any injunctive relief would need to be individually tailored. Rule 23(b)(2) does not permit this.

Plaintiffs have failed to affirmatively demonstrate that the requirement of Rule 23(b)(2) is satisfied.

**Recommendation**

The Plaintiffs' motion should be denied for their failure to allege or prove that the Defendant fails to actually furnish medical assistance with reasonable promptness. Also, the requirements of Rule 23(a)(1), (a)(2) and (a)(3) are not met. For the reasons set forth above, this Court **recommends** that the District Court, after an independent review of the record, **deny** Plaintiffs' motion (Doc. 113).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **16-CV-00489-RM**.

Dated this 8th day of February, 2018.

Honorable D. Thomas Ferraro
United States Magistrate Judge