**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aita Darjee, et al., | No. CV-16-00489-TUC-RM (DTF) |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas Betlach, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Renewed Motion for Class Certification, or in the Alternative, to Take Plaintiffs' Motion Under Advisement and for Class Discovery (Doc. 113), and Magistrate Judge D. Thomas Ferraro's Report and Recommendation Re: the Renewed Motion for Class Certification (Doc. 172). Plaintiffs objected to the Report and Recommendation[1] (Doc. 198) and Defendant responded to those objections (Doc. 214). The Court will adopt the Report and Recommendation, deny the Motion for Class Certification, and decline to grant Plaintiffs class discovery. Defendant's Motion for Leave to File Deposition Testimony in Support of Response to Plaintiffs' Objections to Report and Recommendation (Doc. 223) will also be denied.

Also before the Court are Plaintiff's Objections to Order Denying In Part Plaintiffs' Motion to Compel Discovery Responses[2] (Doc. 185), The Court will sustain

---

[1] Plaintiffs' Objections to the Report and Recommendation include a request for oral argument. The Court does not find that oral argument would be helpful and will deny the request.

[2] Plaintiffs requested that the Court hold oral argument regarding their objections. The Court does not find that oral argument would be useful in resolving the objections, and thus denies the request.

1  in-part, overrule in-part Plaintiffs' Objections to the Order Denying Plaintiffs' Motion to

2  Compel.[3]

3  **I.    Background**

4          Plaintiff Aita Darjee is an immigrant from Nepal who came with her family to the

5  United States as a refugee in 2011 and, based on her status as a refugee, is eligible for

6  Full Medical Assistance ("Full MA") with Arizona Health Care Cost Containment

7  System ("AHCCCS"). (Doc. 1 at 13.) Plaintiff Darjee's benefit eligibility was twice

8  improperly reduced, once in 2015 and once in 2016, to Federal Emergency Services

9  ("FES"), a medical plan with significantly less coverage. (*Id.*) After both reductions, Full

10  MA was restored, but Plaintiff Darjee and her family worry that their benefits will again

11  be improperly reduced, preventing them from obtaining much-needed medical care. (*Id.*

12  at 14-15.)

13          Plaintiff Alma Sanchez Haro came to the United States in 2003 as an immigrant

14  and has, since that time, been eligible for Full MA based on her status as a victim of

15  domestic violence under the Violence Against Women Act ("VAWA"). (Doc. 1 at 15.) In

16  2015, Plaintiff Sanchez Haro became a legal permanent resident ("LPR"); LPRs

17  generally have to wait five years for Full MA, but Plaintiff Sanchez Haro is exempt from

18  the waiting period because of her VAWA status. (*Id.* at 15-16.) After obtaining status as

19  an LPR, Plaintiff Sanchez Haro's benefits were improperly reduced to FES on three

20  separate occasions, but Full MA was later restored each time. (*Id.* at 16; Doc. 119 at 4-5;

21  Doc. 158 at 2.) Plaintiff Sanchez Haro suffers from medical conditions, including mental

22  illness, and worries that her reduced status will prevent her from receiving the

23  medications and medical care she relies on. (Doc. 1 at 17.)

24          AHCCCS benefits are determined by the Department of Economic Security

25  ("DES"), which processes applications for benefits using the Health-e-Arizona Plus

26  computer system ("HEAPlus"). (*See, e.g.*, Doc. 117-1 (exhibit explaining the means by

27

28  _____
   [3] Also pending is Defendant's Motion for Summary Judgment (Doc. 228) and Plaintiffs'
   Motion for Partial Summary Judgment (Doc. 238). These motions are referred to Judge
   Ferraro for a report and recommendation; they will be resolved in a separate Order.

which the computer program processes applicant information as well as suggested modifications to the system).) Immigration information relating to eligibility for benefits is stored at an application level; that is, immigration information will not transfer within the system when a caseworker begins a new application, like a renewal. (*Id.* at 6.) The system prompts a caseworker with a series of questions regarding the applicant, including immigration information affecting benefit eligibility, and will then automatically generate a benefit eligibility response. (*See id.*) However, any application which, based on the information input by the caseworker, would result in an eligibility change from Full MA to FES cannot happen automatically because it requires approval by DES supervisory staff. (Doc. 119 at 5-6.)

Plaintiffs filed this putative class action claiming that Defendant, in his official capacity, violated the Medicaid Act, 42 U.S.C. § 1396a(a)(8)[4] by failing to furnish them Medicaid benefits with "reasonable promptness." (*See* Doc. 1 at 17-18.) Plaintiffs additionally claim that the written eligibility notices Defendant sent to Plaintiffs were deficient and in violation of the Due Process Clause of the Fourteenth Amendment in addition to the Medicaid Act, 42 U.S.C. § 1396a(a)(3). (Doc. 1 at 18.)

## II. Class Certification-Related Procedural History

Plaintiffs Darjee and Sanchez Haro filed their two-count Complaint (Doc. 1) in July 2016 alongside a Motion for Class Certification (Doc. 5), which sought certification of a class defined as:

> All immigrant residents of Arizona eligible for full-scope Arizona Health Care Cost Containment System ("AHCCCS") benefits who, on or after January 1, 2015, have been or will be required to recertify their eligibility for AHCCCS and whose benefits have been or will be improperly reduced from full-scope AHCCCS to emergency-only AHCCCS.

(Doc. 5 at 1-2.) Defendant subsequently filed a Motion to Dismiss (Doc. 35) on the basis that Plaintiffs failed to state a claim or, even if they did state a claim, they lacked

---

[4] "A state plan for medical assistance must[] . . . provide that all individuals wishing to make an application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]" 42 U.S.C. § 1396a(a)(8).

standing to assert their claims, and that their claims were moot. After a motions hearing (Doc. 58), Judge Ferraro issued a Report and Recommendation (Doc. 72), recommending that the Court grant the Motion to Dismiss with prejudice and deny as moot the motion for class certification and other pending motions. After considering Plaintiffs' Objections to the Report and Recommendation (Doc. 77; *see also* Doc. 80, 82) the Court adopted the Report and Recommendation in part. (Doc. 85.) Specifically, the Court dismissed Plaintiff Darjee's claim under Count 2, otherwise denied the motion to dismiss, and denied the Motion for Class Certification. (*Id.*; Doc. 87 at 20-23.)

After approximately six months of discovery, Plaintiffs filed the instant Renewed Motion for Class Certification (Doc. 113), for which Judge Ferraro has issued a Report and Recommendation (Doc. 172) recommending denial of the Motion. Plaintiffs objected to the Report and Recommendation (Doc. 198) and Defendants responded to those Objections (Doc. 214).

## III. Renewed Motion for Class Certification

In the Renewed Motion, Plaintiffs seek certification of the following class:
All immigrant residents of Arizona eligible for full-scope AHCCCS benefits who, on or after January 1, 2015, have been or will be required to recertify their eligibility for AHCCCS through the Health-e-Arizona Plus computer system and whose benefits have been or will be reduced from full-scope AHCCCS to emergency-only AHCCCS.

(Doc. 119 at 15.) In support of the Renewed Motion, Plaintiffs submit "Newly Discovered Evidence" (*see* Doc. 119 at 3) that they believe cures the deficiencies that resulted in the denial of their first motion for class certification.

First, Plaintiffs argue that Plaintiff Sanchez Haro's additional erroneous benefit reduction on March 28, 2017, is evidence that the improper and systemic benefit reductions are still ongoing. (Doc. 119 at 3.) According to Plaintiffs, when AHCCCS was processing Plaintiff Sanchez Haro's renewal application, her benefits were reduced to FES despite the fact that her renewal application requested no information regarding her immigration status, and she twice verified her immigration status with a case worker. (*Id.* at 4-5.) Thus, Plaintiffs blame the manner in which the HEAPlus system stores and

presents immigration information upon renewal for the incorrect benefit reduction.[5] (Doc. 119 at 6.)

Second, Plaintiffs present testimony that internal AHCCCS and DES monitoring reveals that errors resulting in improper benefit reductions are numerous and "occur on a nearly daily basis." (Doc. 119 at 7.)

Third, Plaintiffs present evidence that the HEAPlus system stores immigration information on an application-by-application basis as opposed to tying immigration information to the applicant. (Doc. 119 at 7-8.) As a result, when new applications are processed, the computer system does not present the reviewer will all relevant immigration information; only information from the currently pending application is shown. (*Id.*) Testimony from DES and AHCCCS employees, as well as a comparison to a related computer system used for determining food stamps benefits, are offered in support of this notion. (*Id.* at 9.) Altogether, Plaintiffs assert that the HEAPlus system design causes improper benefit reductions because it (1) does not properly access previous immigration information, (2) prompts caseworkers to assign only emergency benefits, (3) does not automatically reverify immigration information, and (4) does not allow automatic FES determinations to be corrected but rather requires caseworkers to make informal annotations to applications. (*Id.* at 10-13.)

Fourth, and lastly, Plaintiffs aver that improper reductions were not the result of conflicting information provided by applicants, but rather can be traced to the HEAPlus computer system. (*Id.* at 13.) Based on the above evidence, Plaintiffs argue that they have sufficient evidence to satisfy the Rule 23 class certification requirements.

In response to the Renewed Motion, Defendant argues that Plaintiffs' contentions that information is not properly stored in the HEAPlus system and that DES is somehow obliged to make the system more efficient are incorrect. (Doc. 128 at 4-5.) Defendant points out that the error rate for incorrect notices of reduction of benefits is less than one

---

[5] Plaintiffs concede that Plaintiff Sanchez Haro's benefits were restored, but attribute the correction to the special attention and additional review precipitated by this lawsuit. (Doc. 119 at 6.)

percent. (*Id.* at 3.) He further argues that, in any event, an inconvenient or less than ideally efficient computer program does not establish a policy or practice of denying Full MA benefits. (*Id.* at 5.)

In evaluating the Renewed Motion, Judge Ferraro found that Plaintiffs failed to satisfy their burden of showing commonality, typicality, or numerosity. (*See* Doc. 172.) Accordingly, he recommends that this Court deny the Renewed Motion for Class Certification. (*Id.* at 14.)

As to commonality, Jude Ferraro rejected the argument that being "at risk" of a benefit reduction was sufficient to establish a violation of 42 U.S.C. § 1396a(a)(8), so an allegation that all putative class members had suffered a non-cognizable injury could not establish commonality. (*Id.* at 5-7.) Alternatively, Judge Ferraro found that simply alleging a violation of the same statutory provision is insufficient to establish commonality under Rule 23. (*Id.* at 7.) Citing *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), Judge Ferraro explained that "the commonality provision requires a plaintiff to affirmatively demonstrate that the class members have suffered the same injury, not merely violations of the same provision of law." (Doc. 172 at 7.) To that end, Judge Ferraro pointed out that improper benefit reductions identified by Plaintiffs, even as to just those suffered by Plaintiff Sanchez Haro, did not have the same cause. (*Id.* at 7-8.) In addition, Judge Ferraro pointed with disapproval to Plaintiffs' failure to set temporal limits to the proposed class because it is incongruous with the statute's requirement that benefits be furnished with "reasonable promptness[.]" (*Id.* at 10.) Finally, because benefit reductions must ultimately be approved by a DES eligibility worker, the HEAPlus system cannot alone be to blame for benefit reductions. (*Id.* at 10-11.)

In finding that the proposed class fails to satisfy the Rule 23 typicality requirement, Judge Ferraro once again pointed to the disparate causes of the named Plaintiffs' injuries as evidence that Plaintiffs are not, and cannot, be typical of the claims at issue. (*Id.* at 11.) As an example, Plaintiff Darjee's benefits were reduced because her immigration status was not "carried forward" in the HEAPlus system, while one of

Plaintiff Sanchez Haro's benefits reductions was because of caseworker error. (*Id.*)

As to the numerosity requirement, Judge Ferraro concluded that Plaintiffs had not affirmatively shown that the class is sufficiently numerous because the class is not well enough defined. (*Id.* at 12.) That is, Plaintiffs have only presented evidence of the number of people who have received erroneous notification that their benefits were improperly reduced, not the number of people who failed to be furnished with medical assistance with reasonable promptness. (*Id.*) Judge Ferraro found that the final 23(a) requirement, adequacy of representation, was satisfied contingent on satisfaction of the other Rule 23(a) requirements. (*Id.* at 13.)

Finally, Judge Ferraro determined that Plaintiffs had failed to establish that "injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required by Rule 23(b)(2). (*Id.* at 13.) Because Plaintiffs' benefit reductions did not have a single cause, Judge Ferraro explained, "each individual class member would be entitled to a different injunction or declaratory judgment[,]" thus precluding class certification under Rule 23(b)(2). (*Id.* (citing *Wal-Mart*, 564 U.S. at 360).)

## A.    Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

While 28 U.S.C. § 636 "does not require the judge to review an issue *de novo* if no

objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B. Discussion

Because Plaintiffs object to the ultimate conclusion of Judge Ferraro's Report and Recommendation, the Court will engage in de novo review of the Renewed Motion.

#### 1. General Arguments

In their Objection to Judge Ferraro's Report and Recommendation, Plaintiffs begin by arguing that the errors identified by Defendant's HEAPlus computer system have yet to be corrected. (Doc. 198 at 3.) Plaintiffs contend that "[t]he necessary changes concern nearly every aspect of the HEAPlus system" and complain that the "document detailing the significant changes needed . . . has not been finalized and approved, and there is no deadline for its implementation." (*Id.*)

Plaintiffs then go on to describe examples of the myriad errors the HEAPlus system necessarily produces. For example, (1) caseworkers are not able to override the system's determination that an immigrant is eligible only for FES because once data, like immigrant status grant date, has been retrieved from the database, it is no longer editable (*id.* at 4-5); (2) the program does not provide a means for inputting and/or assessing benefit eligibility based on more than one qualifying status (*id.* at 5); and (3) certain data fields incorrectly auto-populate when left unanswered (*id.* at 5 n.5). Plaintiffs also point to correct determinations in their cases by other computer systems making related determinations as further proof that the computer system is deficient. (*Id.* at 7.)

Next, Plaintiffs contend that the manual review process instituted by DES in order to identify and correct improper benefit reductions is "temporary and wholly inadequate at preventing continuing errors[.]" (*Id.*) Plaintiffs also express concern that the manual review process is voluntary, presumably in contrast to a Court-ordered correction of the system, and thus could be discontinued at any time. (*Id.* at 8.) Further, Plaintiffs point out

- 8 -

that errors are still occurring despite the additional review. As an example, Plaintiff Sanchez Haro's March 28, 2017 benefit reduction was erroneously confirmed as correct by a DES supervisor. (*Id.* at 9.)

The remainder of the factual allegations in Plaintiffs' Objections attempts to dismiss counterarguments based on other possible sources of errors. (*See id.* at 12-13.) That is, Plaintiffs seek to establish that although caseworkers and reviewers may cause some errors, the source of the problem causing Plaintiffs' injuries is, ultimately, traceable to the computer system. (*Id.*)

In general, Plaintiffs argue that Judge Ferraro's analysis is deficient because it overstates the Plaintiffs' burden in obtaining class certification, delves inappropriately into the merits of Plaintiffs' claims, and fails to consider evidence that supports class certification. (*Id.* at 13-14.) Citing *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013), Plaintiffs contend that Judge Ferraro's analysis was, in essence, a ruling on the merits of the putative class's claims. (Doc. 198 at 14.) Instead, according to Plaintiffs, Judge Ferraro should have considered only that "each putative class member's renewal applications is [sic] processed using the same computer system and according to the same policies" and on that basis certify the class. (*Id.*) Finally, Plaintiffs cite *MKB v. Eggleston*, 445 F. Supp. 2d 400 (S.D.N.Y. 2006), as an example of a case in which the district court certified a class with "strikingly similar factual circumstances." (Doc. 198 at 16.)

The last general objection Plaintiffs have to Judge Ferraro's Report and Recommendation is with regard to his factual finding that "[t]here is nothing before the Court from which it can conclude that the medical assistance owed to these five (5) AHCCCS recipients[6] was not furnished with reasonable promptness." (Doc. 172 at 9; *see* Doc. 198 at 16.) Plaintiffs object that this is an impermissible ruling on the merits and an erroneous and procedurally inappropriate determination that the Plaintiffs' claims are moot. (Doc. 198 at 16.) They contend that the errors resulting in benefit reductions are

---

[6] Two named plaintiffs and three putative plaintiffs.

ongoing despite remedial efforts, and that absent class discovery "Plaintiffs have not been able to specifically identify other individuals who have similarly [to Plaintiff Sanchez Haro] fallen though the crack of Defendant's review process, or had difficulties accessing medical services even though their cases were deemed 'corrected'. . . ." (*Id.* at 17-18.)

Defendant responded in opposition to the Objections and, among other things, asserts that Plaintiffs have, on numerous occasions, made "incorrect or misleading" statements.[7] (*See* Doc. 214.) As a general response, Defendants argue that Plaintiffs' class definition is overbroad because immigrants whose benefits have been reinstated "have no claim, and the Plaintiffs offer no reason why they should be in the litigation." (*Id.* at 12.)

As a preliminary matter, the issue before the Court is whether Plaintiffs are entitled to certification of their proposed class, and Plaintiffs are correct that *Amgen* cautions against "free-ranging merits inquiries at the certification stage[,]" 568 U.S. at 466. Still, "Rule 23 does not set forth a mere pleading standard" but rather requires plaintiffs to "affirmatively demonstrate [] compliance with the Rule[.]" *Wal-Mart*, 564 U.S. at 351. District courts are permitted to consider merits questions "to the extent—but only to the extent—that they are relevant to determining whether the prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.[8] To that end, the Court may consider whether the putative class members' injuries are similar, or their claims similarly cognizable, to the named Plaintiffs' injuries and claims in order to determine whether class certification is warranted. The Court does not agree with Plaintiffs that Judge Ferraro improperly engaged in a decision on the merits or mootness of the named Plaintiffs' claims.

---

[7] The alleged "incorrect or misleading" statements include: the computer program makes eligibility decisions/determinations autonomously (Doc. 214 at 6); the computer enhancements under development by AHCCCS and DES are meant to fix some sort of error in the computer program (*id.* at 8); hundreds of immigrants are being subjected to incorrect benefit reductions (*id.* at 9); case workers cannot override an erroneous eligibility determination (*id.* at 10); and the computer program will always reach the wrong result in cases like Plaintiff Sanchez Haro's (*id.* at 10-11).

[8] "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs' cause of action. Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation." *Wal-Mart*, 564 U.S. at 351-52 (internal quotations and citations omitted).

Plaintiffs' argument, based on certification in *MKB*, that the Court should take a wider-angle view of the class is not persuasive. In *MKB*, the Southern District of New York grappled with whether to certify a class of immigrants who were denied, discouraged, or prevented from applying for state or federally funded public assistance "because of a misapplication of immigrant eligibility rules." *MKB*, 445 F. Supp.2d at 440. That is, caseworkers were misapplying a particular eligibility rule, and misinforming immigrants about the rule which governed their benefit eligibility. *Id.* In its analysis, the district court relied heavily on *Marisol A. v. Giuliani*, 126 F.3d 372 (2d. Cir. 1997) (per curiam), a Second Circuit case that actually cautions against certifying too disparate of a class. *Marisol* involved "painful allegations" by children "who claim[ed] they were deprived of the services of the New York City child welfare system to their extreme detriment[.]" 126 F.3d at 375. In reviewing the district court's decision to certify the class in *Marisol* for abuse of discretion, the Second Circuit stated that "the district court's generalized characterization of the claims raised by the plaintiffs stretches the notions of commonality and typicality," but ultimately declined to overturn the decision despite "believ[ing] that the district court is near the boundary of the class action device[.]" *Id.* at 377. Further, because the class was so general, the Second Circuit ordered the creation of subclasses, each of which needed to independently satisfy the requirements of Rule 23(b)(2). Based on this analysis, and despite the similarity in the factual circumstances underlying *MKB* and, by extension, *Marisol*, certification in those cases is not persuasive here, let alone controlling on this Court.

## 2. Additional Exhibits Not Before Judge Ferraro

The following exhibits were not available for Judge Ferraro's consideration of the Renewed Motion for Class Certification, but are before this Court in its de novo review of the Motion.

Exhibit 37 – Seventh Katz Declaration (Doc. 199). This sealed exhibit attached in support of the Objection to the Report and Recommendation is an excerpted deposition of Marcella M. Gonzalez of Social Interest Solutions ("SIS"). Ms. Gonzalez testified to the

way the HEAPlus computer program employs immigration status information in reaching an eligibility determination.

Exhibits A - E to Response to Plaintiffs' Objection (Doc. 214-1; 214-2). These exhibits are excerpts of deposition testimony by Marcella M. Gonzalez of SIS, Dareth Cox of AHCCCS, Jorge Quevedo, Julie Ann Swenson of AHCCCS, and Brenda Rackley. Collectively, this testimony purports to show that the HEAPlus system inaccurately makes automatic eligibility determinations, that ACCCHS is researching and logging errors but has not implemented changes to correct this system, and that a caseworker believes there are changes that could make the HEAPlus system more efficient and easier to use.

Exhibits 41- 43 – Eighth Katz Declaration (Doc. 220; 220-1; 220-2; 220-3). The excerpted testimony by Brenda Rackley discusses errors in the HEAPlus system that caused Plaintiff Sanchez Haro's eligibility reduction, despite an indication that the error had been corrected, and leaves open the question of whether others experienced similar reductions. (Doc. 271-1.) There is an email thread between DES employees indicating that Plaintiffs Sanchez Haro and Darjee and putative class member Nyirandekeyaho's case files were "locked." (Doc. 272-2.) The final exhibit is a document of DES's calculations of the error rates encountered in transitions from Full MA to FES benefits. (Doc. 272-3.)

### 3.    Rule 23

Rule 23(a) has four requirements: (1) commonality, i.e., "there are questions of law or fact common to the class;" (2) typicality, i.e., "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" (3) numerosity, i.e., "the class is so numerous that joinder of all members is impracticable;" and (4) adequacy of representation, i.e., the named parties "will fairly and adequately protect the interests of the class." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In addition, plaintiffs must also satisfy at least one of the grounds specified under Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(2), which requires them to show that

declaratory or injunctive relief is appropriate respecting the class as a whole.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Wal-Mart*, 564 U.S. at 350. Before certifying a proposed class, courts must engage in a "rigorous analysis," which often requires some evaluation of the merits of plaintiffs' claims. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Wal-Mart*, 564 U.S. at 350– 51). "Although some inquiry into the substance of a case may be necessary . . . it is improper to advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)).

### a. Commonality

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164–65 (9th Cir. 2014) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)) (internal quotation marks omitted). This requirement is construed permissively and is satisfied by a single common question. *Wal-Mart*, 564 U.S. at 359 (citations omitted); *Hanlon*, 150 F.3d at 1019. However, it requires more than a showing that class members have suffered a violation of the same provision of law. Rather, the rule "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349 (internal quotations omitted).

Plaintiffs rely on the reasoning in *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), and *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) for the proposition that Plaintiffs need not show any injury at all, let alone one common to the putative class. (Doc. 198 at 19 ("Plaintiffs need not show that each member of the class was injured in the same manner, or indeed injured at all."); Doc. 198 at 20 ("it is well established that the existence of a common policy or practice that applies to the class satisfies commonality, even if some class members suffer

smaller, or even no injury") (citing *Armstrong*, 275 F.3d at 863, 868).)

In *Parsons*, the Ninth Circuit affirmed on interlocutory appeal class certification for a group of inmates in state custody who were alleging systemic Eighth Amendment violations. 754 F.3d at 662. Under the Eighth Amendment, "prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Id.* at 677 (citing *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010)). Thus, the constitutional injury the putative class was alleging, and for which a showing of commonality was made, was a *risk of harm*. Here, Plaintiffs allege an injury based on a statutory violation which requires showing that Defendant failed to furnish benefits with reasonable promptness; simply showing the potential for denial of benefits, or even incorrect benefit eligibility determination without subsequent failure to furnish, is insufficient. Thus, unlike the plaintiffs in *Parsons*, exposure here to a single statewide policy or practice does not compel the conclusion that all Plaintiffs suffered the same injury because exposure to the policy Plaintiffs complain about, namely the HEAPlus computer system, is neither a necessary nor a sufficient condition for showing a violation of the relevant statute. *See Parsons*, 754 F.3d at 678 ("every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm"). That is, in order to adjudicate the claims of the putative plaintiffs here, the Court would need to determine the *effect* that the challenged policy or practice had on an individualized basis; such an inquiry is inconsistent with class adjudication. *See id.* ("[The] inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) . . . .")

*Armstrong*, upon which *Parsons* relies, involved a class of inmates with a variety of disabilities who brought civil rights claims based on allegations that state criminal proceedings failed to appropriately accommodate their disabilities in violation of federal law. *See Armstrong*, 275 F.3d at 854. On appeal, the defendants challenged the commonality prong of class certification, arguing that the varying disabilities from which

members of the class suffered precluded a finding of commonality. *Id.* at 868. In a fairly short discussion, the court dismissed this challenge to commonality, stating that "[the Ninth Circuit has] previously held, in a civil rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Id.* (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985)). Plaintiffs here bring a civil rights suit alleging a deprivation under the Medicaid Act to have medical assistance furnished with reasonable promptness, but the policy they challenge only establishes the *possibility* that a deprivation of civil rights may occur. As defined, the class may include members who have and members who have not suffered a deprivation. *Armstrong* is not analogous to this case. An analogous commonality challenge, which is not in issue here, would be that the medical assistance Plaintiffs claim to have been deprived of is not the same as to each Plaintiff (*e.g.*, if some plaintiffs sought prescription medications, others preventative general care, and still others medically necessary surgical procedures). Under those circumstances, the variation in injury type would likely not preclude certification under *Armstrong*.

The reasoning in *Torres* is similarly inapplicable.[9] In *Torres*, the class members were alleging that they suffered an informational injury by the defendant's failure to satisfy a disclosure duty. *See* 835 F.3d at 1133. Thus, the court's discussion of whether certain class members could show injury related to whether they would be able to prove damages once liability had been established. *See, e.g.*, *id.* at 1135 ("any individualized questions raised by [the defendant] 'nearly all go to the issue of damages rather than liability'" (quoting the district court's discussion of commonality with approval)); *id.* at 1137 ("fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow

---

[9] The footnote Plaintiff cites is from a portion of the opinion which discusses whether the putative class in that case had satisfied Rule 23(b)(3). See 835 F.3d at 1137, n.6 ("it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase"). Here, Plaintiffs seek certification based on Rule 23(b)(2). (See Doc. 113 at 1.) Even if Plaintiffs had cited to a portion of the opinion discussing the commonality requirement of Rule 23(a)(2), the difficulties with showing a common injury as to the two cases are distinguishable.

out those non-injured members at the *damages* phase" (emphasis added)). Here, liability under 42 U.S.C. § 1396a(a)(8) of the Medicaid Act would require a showing that medical assistance was not "furnished with reasonable promptness to all eligible individuals[.]"42 U.S.C. § 1396a(a)(8). Incorrect status assignment alone, with the potential for benefit denials, is insufficient; this situation is not analogous to that of the plaintiffs in *Torres*.[10]

The first inquiry in determining whether the putative class satisfies the commonality portion of Rule 23 is whether the improper functioning of the HEAPlus system is a common fact as to all putative Plaintiffs. Like Judge Ferraro, this Court does not find that Plaintiffs have affirmatively shown this common connection. That is, although the HEAPlus system seems to cause some of the erroneous benefit eligibility reductions, it appears the system creates errors in specific factual situations, but that it is not faulty as to every determination it assesses; based on that, Plaintiffs' putative class is overbroad.

To illustrate the lack of commonality, one only need look to a named Plaintiff as an example. Plaintiff Sanchez Haro has two independent grounds of eligibility for Full MA: (1) she is exempt from the five-year ban on benefit eligibility for qualified immigrants, and (2) she was granted status as a battered immigrant in 2003 and thus would have satisfied the five year ban, had one applied to her. (Doc. 158 at 3-4.) Her status in the United States changed, however, when in 2015 she became an LPR. Although LPR status should not have affected her eligibility for Full MA, the HEAPlus system used the 2015 change-in-status date to find her ineligible for Full MA based on a the five-year ban (to which she should not be subject). (*Id.*) Still, had Plaintiff Sanchez Haro had only one qualifying status with one corresponding date and/or not been subject to an exception to the five-year ban, Plaintiffs' allegations seem to suggest that the HEAPlus system would have properly determined her eligibility.

---

[10] To crystalize this distinction, the analogous situation for Plaintiffs here would be if liability under the Medicaid Act was premised on erroneously notifying someone they were eligible for FES benefits when they were entitled to Full MA. Some Plaintiffs might have actual damages (costs incurred for medical expenses that were not covered, detrimental health effects experienced because of treatment not sought, etc.) and others may have only been misinformed.

In Plaintiffs' Objections to the Report and Recommendation, Plaintiffs acknowledge that Plaintiff Sanchez Haro's specific circumstances are incompatible with proper functioning of the HEAPlus system. (Doc. 198 at 5 ("As a result of the current programing, the computer system will *always* generate the wrong eligibility determination for individuals, like Ms. Sanchez Haro, who have held two qualifying statuses." (emphasis in original).) Plaintiff's Sanchez Haro's circumstance, however, is not common to the class; indeed, it is not even common Plaintiffs Sanchez Haro and Darjee. Despite this, Plaintiffs have not attempted to narrow the class to other Plaintiffs who have had benefits reduced as a result of the same faulty design feature. Even if the HEAPlus system's erroneous automatic dispositions were common to all putative class members, individualized adjudication on the merits would be required, and thus finding commonality is precluded.

The factual question asked in common by the class Plaintiffs seek to certify is whether the class of immigrants whose AHCCCS benefits renewals were processed using the HEAPlus system had their benefits erroneously reduced. However, adjudication of this matter would require the Court to further ask whether those Plaintiffs whose benefits were erroneously reduced were furnished the benefits to which they are entitled with reasonable promptness. Although the Court declines to make a final determination of what constitutes "reasonable promptness" at the class certification stage, it stretches the bounds of common sense for Plaintiffs to claim that notification of an erroneous benefit determination that in some cases was later corrected, without more, necessarily constitutes failure to furnish benefits with reasonable promptness. As such, a finding that the HEAPlus system is inadequate for making AHCCCS benefit determinations as to immigrant Arizona residents eligible for Full MA AHCCCS benefits, is not tantamount to a factual resolution of this matter on the issue of Defendants' liability as to all putative class members. Rather, once the legal question of what "reasonable promptness" means is answered, individualized factual determinations would be necessary as to each Plaintiffs' receipt or non-receipt of benefits within those temporal bounds. Based on the foregoing,

the Court finds that Plaintiffs have failed to satisfy the commonality requirement of Rule 23 as to their proposed class.

### b. Typicality

In the renewed motion for class certification, Plaintiffs assert that typicality is satisfied because "Plaintiffs' claims, like all immigrants who submit renewal applications through HEAPlus, arise from the computer system's flawed processing of those applications." (Doc. 119 at 19.) The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Although Defendant's conclusion that the erroneous reductions are "idiosyncratic to each case" (Doc. 128 at 21; Doc. 214 at 19) is unconvincing on the present record, the Court does not find that the typicality requirement has been satisfied. As with commonality, Plaintiffs' overbroad putative class description prevents finding that the named Plaintiffs are typical of the putative class. Plaintiffs' argument that the errors are not caused by caseworkers (*see* Doc. 119 at 10-12) or by applicants (*see id.* at 13) do not aid in making the class proper for certification. As Judge Ferraro pointed out in the Report and Recommendation, even the errors experienced by the named Plaintiffs are distinct from one another. (*See* Doc. 172 at 11.) Simply arguing that other independent sources of error, namely applicant or caseworker error, were not the main cause of the named Plaintiffs' erroneous benefit reductions, does not satisfy the burden of showing typicality for the named class. Indeed, as Plaintiffs describe the class, some putative class members could have had, or will have, benefits improperly reduced by applicant or caseworker error. Plaintiffs have not satisfied their burden of showing typicality.

. . . .

### c.      Numerosity

To satisfy the numerosity requirement of Rule 23, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). There is no specific threshold for satisfaction of the numerosity requirement, *General Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 330 (1980), but classes over 40 have generally been deemed sufficiently large. *See, e.g.*, *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *Wamboldt v. Safety-Kleen Sys., Inc.*, No. C 07-0884 PJH, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007). The most important factor to be considered is the number of class members, but "the ultimate question concerns the practicability of joinder." S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary at 540 (2017).

Plaintiffs argue that even if the sheer number of purported class members is not dispositive,[11] other factors, such as "state-wide geographic distribution, limited financial means, and linguistic and cultural barriers all favor class certification[.]" (Doc. 119 at 20-21; Doc. 198 at 29.) While this argument is persuasive, Plaintiffs' overbroad class definition makes it difficult for the Court to be convinced by the assertion that "hundreds of immigrants have had their benefits improperly reduced." (Doc. 119 at 20.) The Court agrees that the impracticablity factors[12] weigh in Plaintiffs' favor, but absent some indication as to how many members an acceptably narrowly defined class would have, the Court cannot find that Plaintiffs have affirmatively satisfied the numerosity requirement of Rule 23(a).

### d.      Adequacy of Representation

Like Judge Ferraro, the Court finds that if the other requirements of Rule 23(a) had been satisfied, Plaintiffs Darjee and Sanchez Haro would be adequate class representatives.

. . . .

---

[11] Plaintiffs state in their motion that "[c]lass size alone justifies class certification." (Doc. 119 at 20.)
[12] E.g., that Plaintiffs' putative class members are immigrants, may not be fluent in English, are dispersed across the state, and are necessarily low income.

### e.     Rule 23(b)(2)

Plaintiffs who satisfy Rule 23(a) must also show that they satisfy one of the grounds of Rule 23(b) in order to be certified as a class. Plaintiffs seek certification based on Rule 23(b)(2), which requires Plaintiffs to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).   "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Walmart*, 564 U.S. at 361. "[T]he relief sought must perforce affect the entire class at once . . . ." *Id.* at 361-62.

Plaintiffs suggest that if the HEAPlus system were able to "carry through" immigration information (*see* Doc. 119 at 8) or, to a related end, that if the system stored information on an applicant-by-applicant basis, as opposed to application-by-application (*id.*), that benefit reductions like Plaintiff Sanchez Haro's would not occur. Although this may be the case if the class was limited to immigrants who, like Plaintiff Sanchez Haro, experienced benefit reductions based on HEAPlus' inability to properly process applications by applicants entitled to Full MA based on an exception to the general eligibility rules, the purported class Plaintiffs seek to certify is much broader than that. Similarly, a generalized "just fix the whole thing" type injunction would be inappropriate relief for the Court to entertain at this stage based on Plaintiffs' allegations. *See Flores v. Huppenthal*, 789 F.3d 994, 1006 (9th Cir. 2015) ("And when plaintiffs seek a systemwide injunction for widespread wrongs, they must demonstrate that the expansive scope of the injunction sought is no broader than necessary to remedy the inadequacy that produced the injury in fact that the plaintiff has established." (internal quotations omitted)).

The Court does not find that Plaintiffs have affirmatively established that a single injunction or declaration would provide relief to the entire class, and thus they have not satisfied the requirement of Rule 23(b)(2).

. . . .

### C.    Conclusion

The Court will deny Plaintiffs' renewed motion for class certification. On the whole, Plaintiffs' proposed class is too broad for class certification to be appropriate. Additionally, the Court does not find that additional pre-certification class discovery would affect the Court's resolution of this Motion, so Plaintiffs' alternative request for the Court to take this motion under advisement and allow for class discovery is denied.

### IV.    Motion for Leave to File Deposition Testimony (Doc. 223)

Defendant moved for leave to file additional deposition testimony in support of his responses to Plaintiffs' Objections to Judge Ferraro's Report and Recommendation. Because additional exhibits would not have been useful to the Court's consideration of the Renewed Motion for Class Certification or of Judge Ferraro's Report and Recommendation, the Court will deny the Motion.

### V.    Objection to Order on Motion to Compel (Doc. 185)

Plaintiffs moved to compel responses to interrogatories and requests for production. (Doc. 144.) Generally, the discovery Plaintiff sought in the motion was information on how the HEAPlus computer system functions and how it processes renewal applications with regard to immigrants other than the named Plaintiffs, for comparative purposes. (Doc. 144 at 3.) In support of the Motion, Plaintiffs incorporated their Renewed Motion for Class Certification (Doc. 113). (Doc. 144 at 7.) Defendant responded to Plaintiffs' motion to compel (Doc. 147), claiming that all discovery requests relating to AHCCCS applicants other than Plaintiffs are irrelevant and burdensome. Plaintiffs replied in support of their motion to compel. (Doc. 149.)

Judge Ferraro issued an Order (Doc. 173) in which he granted in part and denied in part the motion to compel. Specifically, based on his determination that Plaintiffs are not eligible for class certification, Judge Ferraro denied all the "pre-certification/class discovery" requests.[13] (*Id.* at 6.) As to the other requests, Judge Ferraro granted the motion as to Interrogatory Nos. 6 and 18, and as to request for production nos. 15 and 16;

---

[13] The "pre-certification/class discovery" requests were: interrogatory nos. 2, 4, 10, and 11 and request for production nos. 2, 3, 4, 10, 11, 12, 13, and 14. (*See* Doc. 173 at 4.)

he denied the motion as to Interrogatory Nos. 7, 8, 9, 12, 13, and 16. (*See* Doc. 173.) Plaintiffs object to all of Judge Ferraro's denials except as to Interrogatory No. 16 and request for production nos. 12 and 14. (*See* Doc. 185.)

### A. Standard of Review

After referral of a pretrial matter to a magistrate judge, a district court judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is *clearly erroneous or contrary to law*." 28 U.S.C. § 636(b)(1)(A) (emphasis added). "A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with a 'definite and firm conviction that a mistake has been committed.'" *Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). "[T]he clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable." *Id.*

### B. Discussion

As explained below, none of Plaintiffs' protestations have provided this Court with a "definite and firm conviction that a mistake has been committed," nor have they convinced the Court that Judge Ferraro's findings were unreasonable or devoid of evidentiary support. *See Tri-Star Airlines*, 75 F. Supp. 2d at 839.

#### 1. Pre-Certification Class Discovery Requests

Judge Ferraro denied the Motion to Compel as to Plaintiffs' Interrogatory Nos. 2, 4, 10, and 11 and Requests for Production Nos. 2, 3, 4, 10, 11, and 13 as part of his general denial of all discovery requests related to class discovery. (Doc. 173 at 4.) Judge Ferraro found that Plaintiffs had not made a prima facie showing that the Rule 23 requirements are satisfied or that the requested discovery is likely to produce substantiation of the class allegations. (*Id.* at 5 (citing *Manolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).)

In light of the Court's denial in this Order of Plaintiffs' Renewed Motion for Class

Certification, *see* Sec. III, *supra*, the Court does not find that Judge Ferraro's conclusion that Plaintiffs had not made a sufficient showing to entitle them to pre-certification class discovery was clearly erroneous. Plaintiffs' objections as to these requests will be overruled.

## 2. Plaintiffs' Interrogatory No. 7

Judge Ferraro found that neither Plaintiff has claimed that Defendants unlawfully failed to follow the *ex parte* process about which Plaintiffs sought discovery and that, as a result, an interrogatory seeking information regarding Defendants' adherence to this process is irrelevant. (Doc. 173 at 7.) Plaintiffs rightly object that the Complaint does allege non-compliance with the *ex parte* process. (Doc. 185 at 7; *see also* Doc. 1 at 12 ("AHCCCS policy and practices fail to process recertifications for immigrants pursuant to the *ex parte* process.").) Defendants did not specifically respond to Plaintiffs' objection regarding Interrogatory No. 7. (*See* Doc. 201.)

Because Judge Ferraro's decision regarding Interrogatory No. 7 was premised on an erroneous reading of the Complaint, his denial of the motion to compel as to the Interrogatory was also erroneous. The Court will sustain the objection as to Plaintiffs' Interrogatory No. 7 and order Defendants to respond to the Interrogatory.

## 3. Plaintiffs' Interrogatories Nos. 8 and 9

Judge Ferraro denied the motion to compel as to Interrogatory Nos. 8 and 9 because he found that they had already been answered. (Doc. 173 at 7-8.) Plaintiffs argue that Defendant has only responded in part, and that he should be required to supplement his responses with additional and specific information regarding the case agents that processed Plaintiffs' applications. (Doc. 185 at 8.) The parties agree the Defendants have provided an answer to the interrogatories, but disagree as to the requisite scope and depth of the response. Because there is evidence to support Judge Ferraro's finding that Defendant had sufficiently answered the interrogatories, the Court finds that Judge Ferraro's ruling was not erroneous. The Objection will be overruled.

. . . .

1

#### 4. **Plaintiffs' Interrogatory No. 12**

2      Like with Interrogatory Nos. 8 and 9, Judge Ferraro found that Defendant's

3  response to Interrogatory No. 12 was sufficient. (Doc. 173 at 8-9.) Plaintiffs object that

4  Defendant's answer to the Interrogatory, which was, in part, an indication that Defendant

5  lacked information to answer more fully, was incomplete and should be supplemented.

6  (Doc. 185 at 9; *see also* Doc. 144.) Judge Ferraro's determination that the Interrogatory

7  had been fully answered was not clearly erroneous, so the objection will be overruled.

8

#### 5. **Plaintiffs' Interrogatory No. 13**

9      Judge Ferraro concluded that Defendant's response to Interrogatory No. 13 was

10  sufficient. (Doc. 173 at 9.) Plaintiffs object, arguing that, at the very least, Defendant

11  should have to supplement his answer based on new information revealed in the course of

12  litigation. (Doc. 185 at 10.) Defendant is reminded that he has an ongoing duty to

13  supplement his discovery disclosures "if [he] learns that in some material respect the

14  disclosure or response is incomplete or incorrect, and if the additional or corrective

15  information has not otherwise been made known to the other parties during the discovery

16  process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). To the extent Plaintiffs complain

17  that Defendant does not supplement with the information already made known to

18  Plaintiffs, the Court points out he has no duty to do so.[14] Because there is evidence to

19  support Judge Ferraro's finding that Defendant's initial response was sufficient, his ruling

20  is not clearly erroneous. As such, the objection will be overruled.

21      **IT IS HEREBY ORDERED** as follows:

22          1.  Judge Ferraro's Report and Recommendation (Doc. 172) is **accepted and**

23              **adopted in full**. Plaintiffs' Renewed Motion for Class Certification (Doc.

24              113) is **denied**.

25          2.  Plaintiffs' Alternative Motion for Class Discovery (Doc. 113) is **denied**.

26

_____

27  [14] The Court is sensitive to the fact that Plaintiffs cannot complain that they have not been disclosed information that they are not aware of. The Court will presume, absent

28  allegations to the contrary, that Defendant is complying with his ongoing duty to supplement. At issue here is not whether Defendant is properly supplementing his response, but rather the sufficiency of his initial response.

3. Defendant's Motion for Leave to File Deposition Testimony (Doc. 223) is **denied**.

4. Plaintiffs' Objections to Judge Ferraro's denial of Plaintiffs' Motion to Compel (Doc. 185) are **overruled in part and sustained in part** as follows:

    a. The Objection is **sustained** as to Plaintiffs' Interrogatory No. 7. Defendant shall have 30 days to answer Plaintiff's Interrogatory No. 7.

    b. The Objection is **overruled** as to Plaintiffs' Interrogatory Nos. 2, 4, and 8-13, and Request for Production Nos. 2-4, 10, 11, and 13.

**Dated this 4th day of September, 2018.**

Honorable Rosemary Márquez
United States District Judge